**F I L E D**

PUBLISH

**August 18, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BOVY HEM,

     Petitioner,

v.

DOUGLASS MAURER, Interim Field
Director, United States Immigration
and Customs Enforcement, UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

     Respondents.

No. 05-9555

---

**Petition for Review**
**(BIA No. A25 172 699)**
**On Transfer of a Petition for a Writ of Habeas Corpus**
**from the United States District Court**
**for the District of Colorado**
**(D.C. No. 04-MK-2467)**

---

Laura L. Lichter, Lichter & Associates, Denver, Colorado, for the Petitioner.

Donald E. Keener, Deputy Director, United States Department of Justice, Civil
Division, Office of Immigration Litigation (Alison Marie Igoe, Senior Litigation
Counsel, with him on the brief), Washington, D.C., for the Respondents.

---

Before **HENRY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

Bovy Hem first entered this country as a Cambodian refugee in 1981 and has been a legal resident ever since. In 1990, Hem was involved in a car accident which left him a paraplegic. Four years later, he was convicted of assaulting a police officer when he refused to let go of a traffic sign and grabbed the officer's shirt, tearing it as he fell from his wheelchair to the ground. In 1999, the Immigration and Naturalization Service ("INS") began removal proceedings against him. Hem protested his removal and sought relief under § 212(c) of the Immigration and Nationality Act ("INA"). 8 U.S.C. 1182(c). Section 212(c), which has since been repealed, granted the Attorney General discretion to stay deportation proceedings brought to remove an alien who has been convicted of an "aggravated felony." An Immigration Judge ("IJ") granted Hem a waiver of inadmissibility under § 212(c), but was subsequently reversed by the Board of Immigration Appeals ("BIA").

In the interim of Hem's conviction and the removal proceedings, Congress passed the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Section 304(b) of IIRIRA repealed § 212(c) discretionary relief. Shortly thereafter, the Attorney General interpreted § 304(b) to apply retroactively, and authorized the INS to institute removal proceedings against aliens like Hem, whose aggravated assault convictions pre-dated IIRIRA's

-2-

effective date. This was followed by I.N.S. v. St. Cyr, 533 U.S. 289 (2001), in which the Supreme Court held that application of IIRIRA § 304(b) would be impermissibly retroactive to aliens whose aggravated felony convictions followed from guilty pleas.

St. Cyr left unanswered a key question: is § 304(b) impermissibly retroactive to aliens whose aggravated felony convictions followed from jury trials? This issue has now been addressed by numerous lower courts. These courts have diverged on whether, and to what extent, litigants must show they relied on pre-IIRIRA law to sustain an IIRIRA retroactivity claim. The Third, Fourth, and Sixth Circuits require that a reasonable litigant could have "objectively relied" on the availability of § 212(c) in a given situation. The First, Second, and Eleventh Circuits demand that litigants demonstrate they actually relied on the availability of such relief. Because the former interpretation is a far more persuasive reading of the Supreme Court's retroactivity cases, we conclude that an objective showing of reliance is the appropriate rule. Applying that rule, we disagree with the majority of circuits that have concluded that litigants who proceed to trial have not suffered retroactive effects under IIRIRA's repeal of § 212(c). Instead, we conclude that a defendant who proceeds to trial but forgoes his right to appeal when § 212(c) relief was potentially available has suffered retroactive effects under IIRIRA. We therefore **REVERSE** the BIA's

determination that St. Cyr is inapplicable to Hem because he did not plead guilty and **REMAND**.

**I**

Hem is a native of Cambodia who was admitted to the U.S. as a refugee in 1981 when he was seven years old and thereafter became a permanent resident. On April 26, 1994, Hem, a paraplegic, was approached by a police officer as he was "horsing around" with a traffic sign. After being told that he would be ticketed if he did not let go of the traffic sign, Hem wheeled away from the officer, but the officer chased Hem and pulled him from his wheel chair. While Hem was being pulled from his chair, he grabbed the officer's shirt to steady himself, ripping his uniform in the process. He was thereafter indicted on two counts of aggravated assault in South Dakota. Each count carried a maximum sentence of fifteen years. S.D. Codified Laws § 22-6-1. Following a jury trial, Hem was convicted of one count of aggravated assault in violation of S.D. Codified Laws § 22-18-1.1(3).[1] He received a suspended sentence of three years, but violated the conditions of suspension, and served almost three years in prison. Had Hem been convicted on either count, he faced a maximum sentence

---

[1] S.D. Codified Laws § 22-18-1.1(3) then provided:
Any person who . . . [a]ttempts to cause or knowingly causes any bodily injury to a law enforcement officer or other public officer engaged in the performance of the officer's duties . . . is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

of fifteen years.  Hem did not appeal his conviction.

On September 22, 1999, the INS began removal proceedings against Hem, charging him as being subject to removal under 8 U.S.C. § 1227(a)(2)(iii), which mandated removal of aliens who have been convicted of an "aggravated felony" (a "crime of violence" for which the term of imprisonment was at least one year).

Hem appeared before an immigration judge and conceded that his aggravated assault conviction qualified him for removal.  He sought relief on several grounds:  withholding of (now "restriction on") removal under 8 U.S.C. § 1231(b)(3); relief from removal under the Convention against Torture ("CAT"); and a "§ 212(c) waiver" of inadmissability under 8 U.S.C. § 1182(c).[2]

The IJ ruled that Hem's offense did not involve a crime which was "particularly serious," thus establishing Hem's eligibility for § 1231(b)(3) withholding, and relief from removal under CAT.  In denying the application for withholding of removal under § 1231(b)(3), the IJ found that the harm Hem suffered did not rise to the level of persecution.  Hem's application for relief from removal under CAT was also denied by the IJ on the basis that Hem had not shown that it was more likely than not he would be tortured if returned to Cambodia.

---

[2] Section 212(c) was repealed by IIRIRA § 304(b), and was replaced with a new form of discretionary relief called cancellation of removal, codified at 8 U.S.C.  § 1229b.

In addressing the § 212(c) waiver, which was available to Hem at the time he was convicted, the IJ noted that although such relief was eliminated by IIRIRA in 1996, the Supreme Court had held that application of IIRIRA to defeat an alien's preexisting eligibility for a § 212(c) waiver would be impermissibly retroactive under the principles of Landgraf v. USI Film Products, 511 U.S. 244 (1994), and its progeny. See I.N.S. v. St. Cyr, 533 U.S. 289 (2001). Crediting that St. Cyr involved an alien who had pled to the underlying removable offense rather than being found guilty at trial (as Hem was), the IJ nevertheless refused to rule the distinction dispositive due to constitutional misgivings about making unfavorable distinctions based on a defendant's exercise of his right to jury trial. After considering Hem's extensive family ties to the U.S., his long residence in the country, and his physical circumstances, the IJ granted the § 212(c) waiver, allowing Hem to stay in the U.S.

On appeal of the § 212(c) determination to the BIA, the INS argued that because the underlying conviction was obtained by trial rather than by plea, St. Cyr was inapplicable, and thus that Hem's case raised no retroactivity concerns. The BIA agreed, reversed the IJ's grant of § 212(c) relief, and ordered Hem removed to Cambodia. Hem sought review of the BIA's decision by way of a 28 U.S.C. § 2241 petition filed in district court. That court, however, did not rule on the petition. Instead, it transferred the petition to this court in accord with the recent REAL ID Act amendments eliminating habeas review of BIA removal

decisions.[3]

In his habeas petition before the district court, Hem argued that St. Cyr controls his case, and thus, he is entitled to seek § 212(c) relief.  Under former § 212(c) of the INA, deportable aliens who had accrued seven years of lawful permanent residence in the United States could request discretionary relief from deportation by arguing that the equities weighed in favor of their remaining in the United States.  Even an alien deportable because he had been convicted of an aggravated felony, see 8 U.S.C. § 1227(a)(2)(A)(iii), was eligible for this discretionary relief if he served a term of imprisonment less than five years.  See 8 U.S.C. § 1182(c).  There was also a strong likelihood that this relief would be

---

[3] The REAL ID Act, inter alia, shifted certain immigration disputes formerly raised through habeas corpus in the district courts to the courts of appeals and converted them into petitions for review.  Pub. L. No. 109-13, 119 Stat. 231 (2005).  Congress added a new provision codified at 8 U.S.C. § 1252(a)(5).  Subsection (a)(5), entitled "Exclusive Means of Review," provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

Thus, this section makes a petition for review to an appellate court the sole means of review of an order of removal issued under the INA, and specifically excludes review under the habeas statutes.  The Act applies to "cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division."  8 U.S.C. § 1252.

granted; indeed, the Attorney General granted it in over half of all cases in which it was sought.  See St. Cyr, 533 U.S. at 296 & n.5.  Factors deemed favorable for granting relief include family ties within the United States, residence of long duration in this country, evidence of hardship to the immigrant's family as a result of deportation, and a stable history of employment.  See In re Marin, 16 I & N Dec. 581, 584-85 (BIA 1978).

Section 304(b) of IIRIRA repealed § 212(c) relief entirely, replacing it with a procedure called "cancellation of removal."  See 8 U.S.C. § 1229b.  This narrower form of relief is not available to an alien convicted of any aggravated felony.  IIRIRA also retroactively expanded the definition of "aggravated felony" to include dozens more offenses, including misdemeanor and low-level felony offenses.  See 8 U.S.C. § 1101(a)(43).

In its opposition to Hem's petition for relief under § 212(c), the government argues that St. Cyr's bar against retroactive application of § 304(b) of IIRIRA does not apply to petitioners who, like Hem, had been convicted in a jury trial and not pursuant to a guilty plea.  We ordered supplemental briefing on the role of reliance on prior law in the Landgraf retroactivity analysis.  In his supplemental brief, Hem urges that we follow the Fourth Circuit in Olatunji v. Ashcroft, 387 F.3d 383 (4th Cir. 2004), and conclude that no reliance on prior law is necessary for a statute to have an impermissible retroactive effect.  Hem argues

alternatively that we should follow the Third Circuit in Ponnapula v. Ashcroft, 373 F.3d 480 (3rd Cir. 2004), to conclude that only objectively reasonable reliance on prior law is necessary to assert a retroactivity claim. The Government asks us to follow the majority of other circuits that have concluded St. Cyr does not apply to defendants whose "aggravated felony" convictions resulted from jury trials and not guilty pleas.

Hem also argues that the IJ incorrectly failed to apply a presumption that his life and liberty would be threatened upon his return because he suffered "persecution" in the past. 8 C.F.R. § 208.16(b)(1)(I).

We conclude that Landgraf, St. Cyr, and the Supreme Court's other retroactivity cases require only objective, and not subjective, reliance to sustain a retroactivity claim, and that litigants who proceed to trial but abandon their right to appeal when § 212(c) relief is available have objectively relied on pre-IIRIRA law. We do not reach the other grounds on appeal because our noted reversal reinstates the IJ's grant of § 212(c) relief.

**II**

When a statute is ambiguous, we defer to an agency's statutory interpretation. Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843 (1984). When determining questions of retroactivity, however, our review is de novo. St. Cyr, 533 U.S. at 320 n.45. "Because a statute that is ambiguous with

-9-

respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for Chevron purposes, no ambiguity in such a statute for an agency to resolve." Id. (citations and quotations marks omitted); see also Arevalo v. Ashcroft, 344 F.3d 1, 10 (1st Cir. 2003) (explaining that "courts, rather than agencies, are best equipped to make the constitutionally tinged judgment calls inherent in retroactivity determinations"); Sarmiento Cisneros v. United States Attorney General, 381 F.3d 1277, 1280 (11th Cir. 2004) (same); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 300 n.53 (5th Cir. 2002) (same).

**A**

As Justice Story observed, the Supreme Court has long disfavored retroactive statutes because "[r]etrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." Eastern Enterprises v. Apfel, 524 U.S. 498, 533 (1998) (quoting 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891)). Retroactive legislation "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions." General Motors Corp. v. Romein, 503 U.S. 181, 191 (1992). Thus, due process "protects the interests in fair notice and repose that may be compromised by

-10-

retroactive legislation." Landgraf, 511 U.S. at 266. Retroactivity is sufficiently disfavored in the law that "a justification sufficient to validate a statute's prospective application under the [Due Process] Clause may not suffice to warrant its retroactive application." Id. (internal quotation and citation omitted).

Landgraf established a two part test for determining whether a statute applies retroactively. First, we ask "whether Congress has expressly prescribed the statute's proper [temporal] reach." Id. at 280. Second, if the court cannot ascertain congressional intent, we consider whether the statute has a retroactive effect. Id. If a retroactive effect exists, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id.

Under Landgraf, a provision has a retroactive effect if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id.; see also Hughes Aircraft Co. v. United States ex. rel. Schumer, 520 U.S. 939, 947 (1997) (stating that the above list is illustrative but not exhaustive). However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations. Rather, the court must determine whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70 (internal citations omitted). In making this

-11-

determination, courts should be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." Landgraf, 511 U.S. at 270.

In INS v. St. Cyr, the Court applied Landgraf's two part retroactivity analysis to IIRIRA's § 304(b), the section that repealed former INA § 212(c). Addressing the first step of Landgraf, the Court concluded section § 304(b) – which simply states that "Section 212(c) (8 U.S.C. § 1182(c)) is repealed" – did not show Congress's unequivocal intent to apply the repeal retroactively to aliens like St. Cyr who had pleaded guilty before the repeal of § 212(c). St. Cyr, 533 U.S. at 320. Proceeding to the second step, the Court determined that retroactive application of § 304(b) would have an "impermissible retroactive effect for aliens who, like [St. Cyr], were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." Id. Specifically, the Court held:

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly "attaches a new disability, in respect to transactions or considerations already past." Landgraf, 511 U.S. at 269. Plea agreements involve a quid pro quo between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.

Id. at 321-22 (some internal quotation marks and citations omitted).

**B**

Since St. Cyr, lower courts have split over two questions essential to this case: whether reliance must be established objectively, subjectively, or even at all, and whether petitioners who proceed to trial have suffered retroactive effects under § 304(b) of IIRIRA. Following the Third, Fourth, and Sixth Circuits, we conclude that only objectively reasonable reliance on prior law is necessary to sustain a retroactivity challenge. For that reason, on the second issue we disagree with the majority of circuits that have concluded St. Cyr does not apply to aliens who challenged their aggravated felony convictions by exercising their right to jury trial. We conclude that just as foregoing or exercising a right to jury trial can demonstrate objectively reasonable reliance, those who proceed to trial but forgo their right to appeal have suffered impermissible retroactive effects under IIRIRA § 304(b).

Following the Supreme Court's analysis in St. Cyr, the Third, Fourth, and Sixth Circuits have held that determining whether a statute has retroactive effects does not entail an inquiry into litigants' actual subjective reliance on prior law, but rather, a review of what reasonable litigants would consider in a given situation. See, e.g., Olatunji, 387 F.3d at 396 (holding in the context of a non-§ 212(c) IIRIRA retroactivity challenge that, if reliance were required, "we would

-13-

insist at most upon objectively reasonable reliance [and not] subjective reliance");

Thaqi v. Jenifer, 377 F.3d 500, 504 n.2 (6th Cir. 2004) ("not[ing] that, under St. Cyr, the [alien] need not demonstrate actual reliance upon the immigration laws in order to demonstrate an impermissible retroactive effect"); Ponnapula v. Ashcroft, 373 F.3d 480, 493 (3d Cir. 2004) ("the Supreme Court has avoided an 'actual reliance' formulation in favor of a 'reasonable reliance' formulation in its retroactivity analysis"); see also Garcia-Ramirez v. Gonzales, 423 F.3d 935, 943-44 (9th Cir. 2005) (two-judge concurrence in panel decision disposed of on other ground; holding in the context of a non-§ 212(c) IIRIRA retroactivity challenge that objectively reasonable reliance on prior law is sufficient). For these circuits, retroactivity analysis centers on whether the relevant circumstances gave rise to interests upon which it would have been objectively reasonable to rely on the state of prior law, and not on whether actual reliance on prior law has been demonstrated. This analysis "turn[s] on the state of the law" and not on "subjective expectations." Garcia-Ramirez, 423 F.3d at 944 n.1.

Abandoning the Supreme Court's consistent use of objective reliance in the context of retroactivity analysis, the First, Second, and Eleventh Circuits have required that the petitioner demonstrate his own, individual reliance on the availability of § 212(c) relief. See Swaby v. Ashcroft, 357 F.3d 156, 161-62 (2d Cir. 2004) (holding that IIRIRA's repeal of INA § 212(c) was not impermissibly

retroactive because, unlike St. Cyr, the petitioner chose to proceed to trial instead of agreeing to a plea and therefore did not "detrimentally rely on the availability of § 212(c) relief"); Rankine v. Reno, 319 F.3d 93, 100 (2d Cir. 2003) (same); Dias v. INS, 311 F.3d 456, 458 (1st Cir. 2002) (holding that IIRIRA's repeal of § 212(c) was not impermissibly retroactive to petitioners who did not rely on pre-IIRIRA law because the "retroactivity analysis must include an examination of reliance") (citing Mattis v. Reno, 212 F.3d 31, 38 (1st Cir. 2000) (Alien must have "actually and reasonably relied" on availability of relief for IIRIRA's repeal of § 212(c) to have retroactive effect); Brooks v. Ashcroft, 283 F.3d 1268, 1274 (11th Cir. 2002) (holding that the repeal of § 212(c) was not impermissibly retroactive because, unlike St. Cyr, petitioner "did not so choose to rely upon the agreed upon terms of a plea" and because his case did not present "the same concerns of quid pro quo, benefit for an exchange, between a defendant and the government"). As discussed in Section II.C below, a requirement that a petitioner demonstrate that he actually relied on § 212(c) turns the historic presumption against retroactive application of statutes on its head.

The Fourth and Seventh Circuits have also rejected retroactivity challenges to IIRIRA's repeal of § 212(c), but have done so by elevating the quid pro quo of the plea bargain into a prerequisite to an IIRIRA retroactivity challenge. See

Chambers v. Reno, 307 F.3d 284 (4th Cir. 2002) (discussed infra in Part II.D)[4];

Montenegro v. Ashcroft, 355 F.3d 1035, 1037 (7th Cir. 2004) (per curiam).  This

analysis too, is overly constrained, ignoring Landgraf's direction that we consider

whether a new statute "would impair rights a party possessed when he acted,

increase a party's liability for past conduct, or impose new duties with respect to

transactions already completed."  Landgraf, 511 U.S. at 280.

C

The facts of Landgraf itself belie any notion that the Supreme Court

requires a showing of actual reliance as a prerequisite to sustain a retroactivity

challenge.  Landgraf concerned the potential retroactivity of the Civil Rights Act

of 1991.  511 U.S. at 247.  Landgraf, the plaintiff, sued her former employer for

---

[4] We recognize that there is tension between Olatunji and Chambers, but observe that they construe different provisions of the INA.  As discussed more fully below, Chambers concluded that IIRIRA § 304(b) – the provision at issue in this case – is not impermissibly retroactive to aliens whose aggravated felony convictions followed jury trials and not guilty pleas.  307 F.3d at 290.  Olatunji, decided two years later, concluded that IIRIRA's redefinition of "admission" under INA §101(a)(13), was impermissibly retroactive with regard to aliens, like Olatunji, who had previously pled guilty with the expectation that their guilty plea would not prevent them from taking brief trips abroad.  387 F.3d at 397.  As discussed below, Olatunji so concluded by construing Landgraf and its progeny to impose no reliance requirement whatsoever.  This broad repudiation of reliance is potentially in conflict with the reasoning of Chambers, which gives reliance a central role in its analysis of IIRIRA § 304(b).  However, because we do not rely on the law of the Fourth Circuit as persuasive authority, but merely cite these cases as illustrative of different approaches to reliance and retroactivity, we do not pursue the matter further.

constructive discharge, arguing that sexual harassment against her created a hostile work environment. Id. at 248. Her suit was dismissed because, despite the district court's finding that Landgraf demonstrated sexual harassment, that harassment did not result in any concrete effect on her employment status. Id. at 254. The Civil Rights Act of 1991 came into effect while Landgraf's appeal was pending in the Fifth Circuit. Id. at 249. Section 102 of the 1991 Act created a right to recover compensatory and punitive damages for intentional discrimination violative of Title VII. Id. at 253. This new legislation also permitted a plaintiff to recover damages where there had been unlawful discrimination in the "'terms, conditions, or privileges of employment,' even though the discrimination did not involve a discharge or a loss of pay." Id. at 255. On appeal, Landgraf sought to have her case remanded for a determination of compensatory damages under § 102 of the 1991 Act. The Fifth Circuit rejected Landgraf's argument and the Supreme Court affirmed, finding the 1991 Act did not apply retroactively. Id. at 249.

Before applying the now-familiar two part test, the Court noted that retroactivity analysis must always be informed by a presumption against giving statutes retroactive effect:

> [P]rospectivity remains the appropriate default rule. Because it accords with widely held intuitions about how statutes ordinarily operate, a presumption against retroactivity will generally coincide with legislative and public expectations. Requiring clear intent

-17-

assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.

Id. at 272-73. Because Congress did not explicitly provide for the temporal reach of the relevant portions of the 1991 Act, the Court proceeded to the second step of Landgraf. Application of the 1991 Act to pre-1991 behavior would have impermissible retroactive effect, the Court concluded, because retroactive application of the new compensatory damage provisions would "attach an important new legal burden" to Title VII defendants. Id. at 283.

In its single reference to the defendant's possible reliance upon pre-1991 law, the Court observed that "[t]he introduction of a right to compensatory damages is also the type of legal change that would have an impact on private parties' planning." Id. at 282. Yet, in a footnote immediately following this sentence, the Court was careful to observe that "concerns of unfair surprise and upsetting expectations are attenuated in the case of intentional employment discrimination, which has been unlawful for more than a generation." Id. at 282 n.35 (emphasis added). The "attenuated" role reliance played in Landgraf can thus not be plausibly read to erect a reliance prerequisite to sustaining a retroactivity claim.

Hughes Aircraft Co. v. United States ex rel. Schumer, the Court's next major civil retroactivity decision, similarly failed to impose any reliance requirement on retroactivity challenges. 520 U.S. 939 (1997). There, the Court considered whether the elimination of certain defenses to qui tam suits under the False Claims Act ("FCA") could be applied retroactively to Hughes Aircraft. Prior to 1986, a qui tam suit was barred if the information upon which it was based was already in the government's possession. Id. at 945. That bar was partially removed by the 1986 FCA amendment which now permitted "qui tam suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of the information." Id. (citing 31 U.S.C. § 3730(e)(4)(A)). Schumer, a qui tam relator, filed suit in 1989 against Hughes Aircraft claiming that the defense company had misled the government with certain accounting practices. Id. at 943. Hughes won dismissal on summary judgment by persuading the district court that the 1986 FCA amendment was not retroactive and that it had fully disclosed its accounting practices to the government. Id. at 943-44. After the Ninth Circuit reversed the district court's retroactivity holding, the Supreme Court granted certiorari and reversed the Ninth Circuit. Id. at 945.

Applying the first step of the Landgraf test, the Court observed that the statute did not reveal a clear Congressional intent to apply the 1986 amendment

-19-

retroactively.  Id. at 946.   Applying the second step, the Court concluded that the statute had retroactive effect because prior to the 1986 amendment, any qui tam action would have been barred by Hughes' disclosures  to the government about the claim submissions.  "The 1986 amendment would revive that action, subjecting Hughes to previously foreclosed qui tam litigation."  Id. at 950.  Application of the 1986 amendment to pre-1986 conduct thus satisfied Justice Story's definition of retroactive effect because it "would alter the substantive rights of a party and increase a party's liability."  Id. (quoting Chenault v. United States Postal Service, 37 F.3d 535, 537, 539 (9th Cir. 1994)).  It is critical to note, as the Fourth Circuit observed in Olatunji, that the Court "so held without even a single word of discussion as to whether Hughes Aircraft – or, for that matter, similarly situated government contractors – had relied on the eliminated defense to its detriment."  387 F.3d at 391.

Although reliance played a central role in Martin v. Hadix – the next major retroactivity case decided by the Court – Martin nevertheless failed to elevate actual reliance into a prerequisite to sustain a retroactivity challenge.  527 U.S. 343 (1999).  Martin followed two successful class action suits brought by prisoners under 42 U.S.C. § 1983 challenging the conditions in the Michigan prison system in 1977 and 1980.  Id. at 347.  The prisoners were successful in both actions, and the federal trial court ordered the semi-annual payment of

attorneys' fees, at the prevailing market rate, for post-judgment monitoring of compliance with the court's decrees in both cases. Id. at 348. By 1998, the prevailing market rate for attorneys was $150 per hour. Id. Fees paid to the prisoners' attorneys was called into question by the enactment of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321. Section 803(d)(3) of the PLRA capped attorneys' fees in prison litigation suits to no greater than 150% of the hourly rate permitted under federal law for court-appointed counsel. Because court-appointed attorneys in the Eastern District of Michigan were paid a maximum of $75 an hour, the PLRA permitted payment of no more than $112.50 for attorneys' fees in prison litigation suits in that district. Martin, 527 U.S. at 350.

After concluding that the statute did not expressly authorize retroactive application of the new fee structure, the Court considered whether the PLRA would have retroactive effect. Id. at 353. The Court observed that the prisoners' attorneys "had a reasonable expectation that work they performed before enactment of the PLRA in monitoring petitioners' compliance with the court orders would be compensated at the pre-PLRA rates as provided in the stipulated order." Id. at 358 (emphasis added). This reasonable expectation would be upset by application of the PLRA to "work performed before its effective date [because it] would alter the fee arrangement post hoc by reducing the rate of

-21-

compensation." Id. Thus, applying the PLRA after the fact would have retroactive effect by "attach[ing] new legal consequences to completed conduct." Id. (citation omitted).

Martin does not focus on whether the prisoners' attorneys actually relied upon pre-PLRA rates; rather, it considers whether reliance by similarly situated lawyers on pre-PLRA rates would have been reasonable. This focus on "reasonable reliance" persisted in the Supreme Court's next major civil retroactivity case, St. Cyr itself.

In St. Cyr, the Court considered whether "the restrictions on discretionary relief from deportation contained in [AEDPA and IIRIRA] . . . apply to removal proceedings brought against an alien who pled guilty to a deportable crime before their enactment." 533 U.S. at 293. The Court applied Landgraf's two part retroactivity analysis to IIRIRA's § 304(b), the section that repealed former INA § 212(c), concluding first that because § 304(b) simply states "Section 212(c) (8 U.S.C. § 1182(c)) is repealed," Congress did not show its unequivocal intent to apply the repeal retroactively to aliens like St. Cyr who had pleaded guilty before the repeal of § 212(c). Having decided that Congress did not unambiguously state its intention to make the repeal of § 212(c) retroactive, the Court went on to the second step of determining whether the rule would have an "impermissible retroactive effect for aliens who, like [St. Cyr], were convicted pursuant to a plea

-22-

agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." Id. at 320.

St. Cyr leaves little doubt that the Supreme Court has never insisted upon actual reliance as a prerequisite to sustaining a retroactivity claim. In discussing the reliance interest frustrated by IIRIRA's repeal of § 212(c) to petitioners who took guilty pleas, the Court observed: "[P]reserving the possibility of [§ 212(c)] relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer . . . ." St. Cyr, 533 U.S. at 323 (emphasis added). The Court's inquiry into the possible motives faced by a class of petitioners similarly situated to Enrico St. Cyr continued: "Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of a plea would not foreclose § 212(c) relief, a great number of defendants in Jedeonwo's and St. Cyr's position agreed to plead guilty." Id. (emphasis added). This language, as the Third Circuit observed, "does not require concrete certainty about the exact historical motives and actual reliance and expectations of each alien who pled guilty." Ponnapula, 373 F.3d at 492. Far from it, St. Cyr explicitly refers to the class of potential defendants affected by the elimination of § 212(c). See St. Cyr, 533 U.S. at 321, 323 ("IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements", "The potential for unfairness in the retroactive application of IIRIRA § 304(b) to

-23-

people like Jideeonwo and St. Cyr is significant and manifest.")

Both Ponnapula and Olatunji provide an extensive discussion of the objective analysis in the context of IIRIRA's repeal of § 212(c). Both emphasize that "[t]he Supreme Court has never required actual reliance or evidence thereof in the Landgraf line of cases, and has in fact assiduously eschewed an actual reliance requirement." Ponnapula, 373 F.3d at 491; see also Olatunji, 387 F.3d at 391 ("neither Landgraf's holding nor subsequent Supreme Court authority supports a subjective reliance requirement"). Language used throughout St. Cyr reflects consideration of the reasonableness and likelihood of reliance on prior law, but it nowhere requires aliens to establish "concrete certainty about the exact historical motives and actual reliance and expectations of each alien who pled guilty." Ponnapula, 373 F.3d at 492 & n.10 (citing several passages from St.Cyr). Again, this follows from the basic thrust of retroactivity analysis: "Whether the particular petitioner did or did not subjectively rely upon the prior statute or scheme has nothing whatever to do with Congress' intent – the very basis for the presumption against statutory retroactivity." Olatunji, 387 F.3d at 394. In contrast, a more generalized concern for objective reliance interests likely affected by a new law is something aptly attributed to Congress when it decides to make a statute (non-)retroactive. See generally St. Cyr, 533 U.S. at 316 (describing Congress' decision to make change in law retroactive as process of "consider[ing] the potential unfairness of retroactive application and

-24-

determin[ing] that it is an acceptable price to pay for the countervailing benefits"

(quoting Landgraf, 511 U.S. at 272-73)).

**D**

In light of our review of the Court's retroactivity cases, we cannot follow our sister circuits that impose a requirement of subjective/actual reliance. Rankine v. Reno, 319 F.3d 93 (2d Cir. 2003) is illustrative of the subjective reliance cases. The court rejected a retroactivity challenge to IIRIRA's repeal of § 212(c) because "petitioners did not detrimentally rely on the availability of discretionary relief when exercising their right to trial." Because petitioners chose to go to trial, the court distinguished them from petitioners who took guilty pleas in two respects:

> First, none of these petitioners detrimentally changed his position in reliance on continued eligibility for § 212(c) relief. Unlike aliens who entered pleas, the petitioners made no decision to abandon any rights and admit guilt – thereby immediately rendering themselves deportable – in reliance on the availability of the relief offered prior to IIRIRA . . . . The claim that [aliens choosing to go to trial] relied on the availability of § 212(c) relief in making the decision to go to trial is therefore somewhat hollow: in fact, they decided to go to trial to challenge the underlying crime that could render them deportable and, had they succeeded, § 212(c) relief would be irrelevant.

> Second, the petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial . . . . Here, petitioners neither did anything nor surrendered any rights that would give rise to a comparable reliance interest.

-25-

Rankine, 319 F.3d at 99-100 (citation omitted).

The Third Circuit made three observations concerning these passages with which we agree. See Ponnapula, 373 F.3d at 489-90. First, with the exception of a single passing reference to another case, Rankine never once mentions the presumption against retroactivity. As the Court made clear in Landgraf and its progeny, however, this presumption informs every step of the Landgraf inquiry. Second, the particular strategic decisions of the individual petitioners are given dispositive weight in the retroactivity analysis, not whether they, as a class, faced "new legal consequences to [their] completed conduct," Martin v. Hadix, 523 U.S. at 353. Finally, Rankine appears to turn the presumption against retroactivity on its head by demanding that petitioners "point[] to . . . conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial." Rankine, 319 F.3d at 100.

Nor can we agree with those circuits following Chambers v. Reno, 307 F.3d 284 (4th Cir. 2002), which seem to elevate the distinctive quid pro quo of the plea bargain into the sine qua non of an IIRIRA retroactivity challenge. Chambers held that petitioners who challenge their underlying convictions through jury trials fail to possess the "reliance interest [present] in pleading guilty [which] arises because of the quid pro quo exchange that characterizes a plea agreement but not trial." Id. at 290. This terse application of Landgraf to the IIRIRA

retroactivity context suffers from many of the same flaws that afflict <u>Rankine</u> and its progeny. As with <u>Rankine</u>, <u>Chambers</u> mentions the presumption against retroactivity only once. Similarly, the particular strategic decisions of the petitioner are given dispositive weight:

> In fact, by rolling the dice and going to trial, Chambers actually ensured that his eligibility for discretionary relief would remain uncertain. Charged with an offense carrying a maximum prison sentence of 20 years, Chambers was offered a plea agreement whereby he would receive a sentence of four years, which at the time would have kept him eligible for discretionary relief. By going to trial, Chambers rejected the certainty of eligibility by risking a sentence of more than five years in the event he was unable to successfully defend against the underlying charge. The fact that Chambers ended up with a shorter prison term than that offered by the government – one that was safely below the five-year eligibility threshold for § 212(c) relief at the time of sentencing – does not change the fact that Chambers proceeded to trial fully aware of the risk that he would be convicted and sentenced to a prison term that would disqualify him under INA § 212(c).

<u>Id.</u> at 291 (citation omitted). Nowhere in this analysis does any consideration apart from detrimental reliance exert influence on the retroactivity analysis. As we discussed above, in none of the recent retroactivity cases – neither <u>Landgraf</u>, <u>Hughes Aircraft</u>, nor <u>Martin</u> – did the Supreme Court confer dispositive weight upon the petitioner's actual strategic decisions. And, although <u>St. Cyr</u> gives reliance a central role in its retroactivity analysis, the Court there conspicuously applies its holding to all petitioners who took guilty pleas before the effective date of IIRIRA – irrespective of any showing that St. Cyr himself actually relied

-27-

on the availability of § 212(c) relief. As Judge Goodwin explained in his Chambers dissent: "Detrimental reliance is simply one manifestation of the unfairness that can result from instability in the law. But the presumption against retroactivity is grounded in broader and more fundamental concerns." Chambers, 307 F.3d at 295-96.

We now hold, for three reasons, that objectively reasonable reliance on prior law is sufficient to sustain a retroactivity claim. First, this rule is more directly tied to the basic aim of retroactivity analysis: in determining whether it is appropriate to presume Congress concluded that the benefits of a new law did not warrant disturbance of interests existing under prior law, it makes sense to look at the objective group-based interests that Congress could practically have assessed ex ante. Second, this rule is consistent with the Supreme Court's analyses in Landgraf and its progeny, none of which required actual reliance. Third, and most immediately pertinent here, the objective approach is consistent with the actual holding in St. Cyr – the Court's most reliance-focused decision – which precluded retroactive application of IIRIRA's elimination of § 212(c) eligibility to all aliens who reasonably could have relied on prior law when pleading guilty, rather than to just those aliens who actually did so rely.

The Supreme Court's most recent discussions of Landgraf confirm that the objective reliance view rests on a sound reading of its retroactivity jurisprudence. In Republic of Australia v. Altmann, 541 U.S. 677 (2004), the Court considered

whether petitioners could use the Foreign Sovereign Immunities Act of 1976 ("FSIA") to recover paintings allegedly taken by the Nazis and held by the Austrian government since 1948. Landgraf did not directly apply, the Court held, because the preamble to the FSIA clearly expressed Congress' intent that the Act would apply to "all postenactment claims of sovereign immunity." Altmann, 541 U.S. at 697. Given that Austria's claim of sovereign immunity post-dated the FSIA, there was no retroactivity problem. Altmann did briefly discuss Landgraf, however, and although it explained the purpose of the presumption against retroactive application by speaking of reliance – the "aim of the presumption is to avoid unnecessary post hoc changes to legal rules on which parties relied in shaping their primary conduct," Altmann, 541 U.S. at 696, it nevertheless stuck to the historic formulations of the "Landgraf default rule":

> When, however, the statute contains no such express command the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Altmann, 541 U.S. at 694 (quoting Landgraf, 511 U.S. at 280). "Reliance," let alone any notion of actual reliance, is conspicuously absent from this 2004 articulation of the Landgraf default rule.

Most recently, in Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422 (2006),

the Court considered whether IIRIRA § 241(a)(5) – which enlarged the class of illegal reentrants whose orders may be reinstated and limited the possible relief from a removal order available to them – could be retroactively applied to a petitioner who unlawfully reentered prior to IIRIRA's effective date. In 1982, Humberto Fernandez-Vargas, a Mexican citizen, unlawfully reentered the United States. Id. at 2427. After remaining undiscovered for over two decades, he applied to change his status to that of a lawful permanent resident. Id. This application led the Government to reinstate his 1981 deportation order under § 241(a)(5). Id. Fernandez-Vargas appealed the deportation order to the Tenth Circuit, arguing that applying § 241(a)(5) to conduct occurring before its effective date, viz., his unlawful reentry, would be impermissibly retroactive. Id. This court rejected that argument, and the Supreme Court affirmed.

The problem with Fernandez-Vargas' Landgraf argument, the majority reasoned, was that § 241(a)(5) did not affect his past conduct. Specifically, "[i]t is . . . the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out." Fernandez-Vargas, 126 S.Ct. at 2432. Consistent with our reading of the Landgraf cases, the Court never converts "detrimental reliance" on prior law into a prerequisite for sustaining a retroactivity claim.

-30-

Rather, the retroactivity inquiry remains the two part inquiry established in Landgraf, together with a strong presumption against retroactive application, see Fernandez-Vargas, 126 S. Ct. at 2428, with no discussion of reliance even appearing until the Court summarizes the pertinent facts of St. Cyr. Given the Court's long history of using the objective reliance approach to retroactivity analysis, we are confident that following that approach in determining whether the repeal of § 212(c) has retroactive effects is the correct one.

**III**

Determining that an objective approach to reliance is appropriate does not end our inquiry; we must also identify the class of persons whose objective reliance interests prior to the repeal of § 212(c) should be analyzed. St. Cyr addressed the question of retroactivity as applied only to those in situations similar to St. Cyr himself – aliens who have pled guilty to crimes who were later made deportable by IIRIRA. St. Cyr, 533 U.S. at 321, 324. As noted, by taking this approach, the Court established an objective, categorical scheme for determining if a statute has impermissible retroactive effects. The Court generalized to a category of affected aliens from the facts of the case before it, asking whether the repeal of § 212(c) would have an "impermissible retroactive effect for aliens who, like [St. Cyr], were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c)

-31-

relief." St. Cyr, 533 U.S. at 320. The Third Circuit describes the Supreme Court's categorical approach as requiring "courts . . . to concentrate on the group to whose conduct the statute is addressed . . . with a view to determining whether reliance was reasonable." Ponnapula, 373 F.3d at 493 (noting that "in Landgraf it was employers subject to Title VII; in Hughes Aircraft it was government contractors;" and "in St. Cyr it was aliens who accepted a plea agreement"); see also Thaqi, 377 F.3d at 504 n.2.

Applying St. Cyr's objective approach, we must now generalize a class of persons similar to Hem, and determine whether application of IIRIRA § 304(b) would have impermissible retroactive effects. As we described above, Hem proceeded to trial on two counts of aggravated assault, was convicted of one of those counts, and received a suspended sentence of three years' incarceration. Hem's record does not indicate whether he, like Ponnapula, was offered a plea agreement prior to deciding to exercise his right to trial; the record does reveal, however, that Hem decided not to appeal his single conviction. Why he would choose not to do so from the perspective of a lawful permanent resident is clear: if Hem appealed successfully, he would have been at risk of being sentenced to a sentence longer than 5 years (indeed, up to 15 years) making him ineligible for § 212(c) relief. See, e.g., North Carolina v. Pearce, 395 U.S. 711, 719 (1969) ("the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction."); State v. Grey Owl, 316 N.W.2d 801,

803-04 (S.D. 1982) (same).  Hem's failure to challenge his aggravated assault

conviction could thus have reasonably been motivated by the availability of

§ 212(c) relief.  Abstracting the salient features from these facts for the purposes

of retroactivity analysis yields the following class:  Aliens who gave up their right

to appeal their aggravated felony conviction when a successful appeal could have

deprived them of § 212(c) eligibility.

We must now determine whether this class of persons suffers impermissible

retroactive effects under IIRIRA § 304(b).  As discussed above, Landgraf

provides that a statute has a retroactive effect if, among other possibilities, it

"would impair rights a party possessed when he acted."  511 U.S. at 280.  There

is no doubt that the right of appeal Hem possessed when he elected not to

challenge his aggravated assault conviction has been impaired retroactively by

IIRIRA § 304(b):  When a defendant, like Hem, proceeds to trial, is convicted,

chooses not to pursue an appeal when that appeal could result in the loss of

§ 212(c) relief, and subsequently loses the availability of § 212(c) relief following

the Attorney General's decision to apply IIRIRA § 304(b) retroactively, his right

to appeal has been retroactively impaired.

Applying "familiar considerations of fair notice, reasonable reliance, and

settled expectations," Landgraf, 511 U.S. at 270, only strengthens this conclusion.

First, Hem, and others similarly situated, had no notice of the coming elimination

of § 212(c) relief.  Second, such persons reasonably relied on the availability of § 212(c) relief when they elected not to challenge their aggravated felony convictions.  Given the heavy weight of immigration consequences in the minds of alien defendants, a decision not to pursue such an appeal very likely rests on the potential risk to § 212(c) relief.  See St. Cyr, 533 U.S. at 323 ("Preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence") (quotation and citation omitted).

This conclusion is consistent with language from the majority cases cited above.  In Montenegro v. Ashcroft, 355 F.3d 1035, 1037 (7th Cir. 2004) (per curiam), the Seventh Circuit held that IIRIRA's repeal of INA § 212(c) relief was not impermissibly retroactive as applied to aliens who "did not abandon rights or admit guilt in reliance on continued eligibility for § 212(c) relief."  See also Rankine, 319 F.3d at 99.  We agree that aliens who have chosen to go to trial but foregone their rights to appeal, have in fact abandoned important rights.  We also agree with the Second Circuit in Rankine that it is the conviction – not the crime – that makes the alien eligible for deportation.  Id. at 101.  Yet, this only strengthens our analysis given that the conviction itself is not final until an appeal has been resolved or the time for filing an appeal has passed.  United States v. Prows, 448 F.3d 1223 (10th Cir. 2006); United States v. Short, 947 F.2d 1445,

1460 (10th Cir. 1991).[5]

**IV**

Landgraf, Hughes Aircraft, Martin, and St. Cyr clarify that the appropriate focus in retroactivity analysis is on whether the class of persons affected by retroactive application of a statute had an objectively reasonable interest in the previous state of the law. Aliens, like Hem, who were in a position in which the availability of § 212(c) relief would reasonably inform their decision to forego a constitutional right, would suffer "new legal consequences to events completed before [the statute's] enactment," Landgraf, 511 U.S. at 269-70, under IIRIRA § 304(b). That section is thus impermissibly retroactive to aliens like Hem. The BIA's categorical determination that St. Cyr does not apply to aliens who contested their previous "aggravated felony" convictions at trial is

---

[5] We also respectfully disagree with Ponnapula's skepticism that there might be a reliance interest for those who continued to trial in the absence of a plea agreement. See Ponnapula, 373 F.3d at 494 ("Because aliens in the latter category had no opportunity to alter their course in the criminal justice system in reliance on the availability of § 212(c) relief, we highly doubt (though do not explicitly hold, for the issue is not before us) that such aliens have a reliance interest that renders IIRIRA's repeal of former § 212(c) impermissibly retroactive as to them.") What the Third Circuit failed to consider is the possibility of giving up rights in reliance on § 212(c) after trial has been completed – that is, giving up the right to appeal because of the possibility that an appeal might lead to conviction on additional counts or a higher sentence and render § 212(c) relief unavailable. There is no basis for distinguishing between a decision to give up a right to trial in favor of the possibility of immigration relief and a decision to forego the right to appeal in favor of such a possibility.

**REVERSED**.  We **REMAND** for proceedings consistent with this opinion.[6]

Because our reversal of the BIA reinstates the IJ's grant of § 212(c) relief, we do

not reach the other grounds on appeal.

---

[6] In its return to Hem's habeas corpus petition, the Government asked that the petition be dismissed because only Hem's counsel signed the petition.  See 28 U.S.C. § 2242 (an application for a writ of habeas corpus "shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf").  We are not obligated, however, to dismiss the petition, and decline to do so.  See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990) ("the defect [of an unverified petition] is one that the district court may, if it sees fit, disregard.").