**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JUAN LUIS VALDEZ-SANCHEZ,

    Petitioner,

v.

ALBERTO GONZALES,
United States Attorney General,

    Respondent.

---

AMERICAN IMMIGRATION
LAW FOUNDATION,

    Amicus Curiae.

No. 05-9506

---

**PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS
(AGENCY CASE NO. A74 440 141)**

---

Chris Kozoll (Jeff Joseph with him on the brief), Joseph Law Firm, P.C., Aurora, Colorado, for Petitioner.

R. Alexander Goring, Attorney (David V. Bernal, Assistant Director and Jamie M. Dowd, Trial Attorney, on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington D.C., for Respondent.

Trina A. Realmuto and Nadine K. Wettstein, American Immigration Law Foundation, Washington D.C., filed an Amicus Curiae brief in support of Petitioner.

Before **O'BRIEN**, **BALDOCK**, and **HOLMES**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

Petitioner Juan Luis Valdez-Sanchez seeks review of the Department of Homeland Security (DHS)'s February 2005 order reinstating a 1993 order removing him from the United States. The question presented in this appeal is whether DHS's application of § 241(a)(5) of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA) to reinstate a prior order of removal against Petitioner was impermissibly retroactive. We have jurisdiction pursuant to 8 U.S.C. § 1252(b)(2). We hold that where Petitioner was ordered excluded, reentered, married a United States citizen, and sought and was granted an adjustment of status prior to the effective date of IIRIRA, DHS may not retroactively apply § 241(a)(5) to reinstate a previous removal order.[1]

_____

[1] Presently before us are two motions concerning the record on appeal. In his supplemental brief, Petitioner attached a chart entitled "Review of Files," describing several documents he believes should have been included in the record. Petitioner also attached several of the documents described in the "Review of Files" chart. He asks the court to enter an order declaring the listed documents part of the record. DHS does not oppose Petitioner's motion to supplement the record and, on December 27, 2006, supplemented the record with most, if not all, the documents. DHS does, however, ask us to strike the "Review of Files" chart attached to Petitioner's supplemental brief. Because we find the present record adequate for our review, we deny both outstanding motions and proceed to the merits.

2

I.

Petitioner, a native and citizen of Mexico, was first deported from the United States on March 25, 1993. Petitioner illegally reentered the United States on May 8, 1993. He married a United States citizen in 1995. Petitioner's new wife filed an application for adjustment of status on his behalf with the Immigration and Naturalization Service (INS), now DHS.[2] INS granted the application on February 11, 1997, making Petitioner a conditional lawful permanent resident. As a prerequisite for removing the condition on Petitioner's permanent residence, INS required Petitioner and his wife to file an I-751 petition confirming the continuation of their marriage and submitting to an interview before February 11, 1999. Petitioner and his wife complied with the condition, filing an I-751 joint petition to remove conditions on February 4, 1999.

INS was slow to act on the petition and the requisite interview was delayed. The record is unclear why the interview was delayed. INS finally scheduled an interview on February 5, 2002. Before INS conducted the interview, Petitioner and his wife divorced, prompting Petitioner to file an I-751 petition to remove the condition on June 11, 2001, along with a request for waiver of the joint petition requirement. On November 12, 2002, INS denied the I-751 petition due to

---

[2] Effective March 1, 2003, the functions previously performed by the INS were transferred to DHS. See Yuk v. Ashcroft, 355 F.3d 1222, 1224 n.3 (10th Cir. 2004). We refer to the INS and DHS interchangeably.

3

"inadmissibilities"–namely, Petitioner's return to the United States within one or two months of being deported in 1993, and his alleged untruthfulness in his application for adjustment of status. Consequently, INS instituted removal proceedings.

On November 15, 2004, an immigration judge (IJ) held a hearing on Petitioner's "Motion to Terminate the Removal Proceedings and Restore Permanent Resident Status." Petitioner testified, and the court heard arguments from counsel. At the conclusion of the hearing, the IJ indicated he was "inclined" to grant Petitioner's Motion to Terminate. The IJ continued the hearing until February 11, 2005, to allow DHS to present a witness and to obtain Petitioner's fingerprints.

On February 11, 2005, Petitioner again appeared before the IJ. At the hearing, DHS also sought termination of the proceedings, stating Petitioner was not properly before the court due to the prior removal. Although not entirely clear from the record, DHS was apparently operating under the assumption that removal proceedings were unnecessary if Petitioner was subject to automatic reinstatement of his 1993 removal order pursuant to IIRIRA § 241(a)(5). The IJ terminated the proceedings, but did not state on what basis he was terminating them. On the same day, DHS issued a "Notice of Intent/Decision to Reinstate Prior Order" against Petitioner, pursuant to § 241(a)(5). On February 17, 2005, DHS issued its reinstatement decision, reinstating Petitioner's March 25, 1993

4

deportation order. Petitioner timely filed a petition for review of the

reinstatement order.[3]

II.

Congress enacted the IIRIRA on September 30, 1996. The IIRIRA

amended several parts of the Immigration and Nationality Act (INA), including

provisions related to reinstatement orders of deportation for those who illegally

reenter the United States. Relevant to our discussion, IIRIRA § 241(a)(5), which

replaced INA § 242(f), 8 U.S.C. § 1252(f) (repealed 1996), reads:

> If the Attorney General finds that an alien has reentered the United
> States illegally after having been removed or having departed
> voluntarily, under an order of removal, the prior order of removal is
> reinstated from its original date and is not subject to being reopened
> or reviewed, the alien is not eligible and may not apply for any relief
> under this chapter, and the alien shall be removed under the prior
> order at any time after the reentry.

8 U.S.C. § 1231(a)(5). These changes became effective on April 1, 1997.

While the law for some time had provided for reinstatement of removal

orders, IIRIRA enlarged the class of aliens whose previous removal orders may be

reinstated after such aliens leave the United States and unlawfully return.

Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422, 2425 (2006). The IIRIRA

---

[3] Petitioner originally filed a Petition for Writ of Habeas Corpus in district court. Consistent with this court's directive in Berrum-Garcia v. Comfort, 390 F.3d 1158, 1162-64 (10th Cir. 2004), and the REAL ID Act, 8 U.S.C. § 1252(a)(5), the district court transferred the case to this court. After the case was transferred, Petitioner filed an Amended Petition for Review.

5

generally forecloses discretionary relief to aliens subject to such removal orders. Id. Petitioner claims on appeal that DHS impermissibly applied § 241(a)(5) of IIRIRA to reinstate his 1993 removal order. He claims his marriage to a United States citizen, application for adjustment of status, and subsequent adjustment of status, all before IIRIRA became effective, renders the Government's application of § 241(a)(5) impermissibly retroactive.

The retroactivity of a statute is a question of law we review de novo. Hem v. Maurer, 458 F.3d 1185, 1189 (10th Cir. 2006). In deciding whether the DHS's application of § 241(a)(5) was impermissibly retroactive we are guided by the Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994). In Landgraf, the Supreme Court established a two-part test for determining whether a statute applies retroactively. First, we ask whether Congress expressed its intentions as to the temporal reach of the statute. Id. If we cannot ascertain congressional intent, we move to the second step of the Landgraf analysis and consider whether the statute has a retroactive effect. Id. A statutory provision has a "retroactive effect" when its application impairs rights a party possessed when he acted, increases a party's liability for past conduct, or imposes new duties or new disabilities with respect to transactions already completed. Id.; see also Hem, 458 F.3d at 1190-91. If application of the statute creates a retroactive effect, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id.

6

A.

The Supreme Court recently shed light on the <u>Landgraf</u> analysis as it applies to § 241(a)(5). In <u>Fernandez-Vargas</u>, the Supreme Court addressed the retroactive effect of IIRIRA. Petitioner Fernandez-Vargas was a Mexican national who, after being deported several times in the 1970s, illegally re-entered the United States in 1982. After his reentry in 1982, Fernandez-Vargas started a trucking business, fathered a son, and remained undetected for approximately twenty years. <u>Fernandez-Vargas</u>, 126 S. Ct at 2427. In 2001, Fernandez-Vargas married his son's mother who was a United States citizen. His new wife filed an application to adjust her husband's status to that of lawful permanent resident, which apparently drew attention to his illegal presence in the United States. <u>Id.</u>

In 2003, the INS initiated proceedings under the new § 241(a)(5), and thus reinstated Fernandez-Vargas's 1981 deportation order. <u>Id.</u> Fernandez-Vargas protested the application of the new law, arguing it would be impermissibly retroactive as applied to him. According to Fernandez-Vargas, because his illegal reentry was before IIRIRA's effective date, he was entitled to the benefit of the terms of the former reinstatement provision under which he would have been allowed to apply for adjustment of status. <u>Id.</u> The Supreme Court rejected Fernandez-Vargas's claims. Applying the <u>Landgraf</u> analysis, the Supreme Court concluded Congress had not expressly prescribed § 241(a)(5)'s proper temporal reach. <u>Id.</u> The Court then considered <u>Landgraf</u>'s second step–whether

7

application of § 241(a)(5) to Fernandez-Vargas would have an impermissible retroactive effect. The Court concluded it would not, holding Fernandez-Vargas's illegal reentry did not trigger application of the new law. Rather, his choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, subjected him to the new and less generous legal regime. Id. at 2432.

Interestingly, the Supreme Court left open the possibility that an individual like Petitioner before us may succeed in arguing against IIRIRA's retroactivity. The Court noted Fernandez-Vargas had ample time between the date Congress passed IIRIRA, September 30, 1996, and its effective date, April 1, 1997, to seek to change his status and thus end his exposure to the less favorable law. By way of example, the Court explained, "he could have married the mother of his son and applied for adjustment of status during that period, in which case he would at least have a claim (about which we express no opinion) that proven reliance on the old law should be honored by applying the presumption against retroactivity." Id. at 2433. These are precisely the steps Petitioner took in our case. Relying on pre-IIRIRA law, Petitioner married a United States citizen, and applied for and received an adjustment of status. When IIRIRA became effective, Petitioner, unlike Fernandez-Vargas, was legally present in the United States as a conditional permanent resident.

8

B.

Although the Supreme Court "express[ed] no opinion" about how it might rule under our circumstances, three of our sister circuits have ruled on similar facts that DHS may not use the new provisions of IIRIRA to reinstate deportation orders for aliens who take certain steps to change their status prior to IIRIRA's enactment.[4] In Faiz-Mohammed v. Ashcroft, 395 F.3d 799, 810 (7th Cir. 2005), the Seventh Circuit ruled DHS's use of IIRIRA to reinstate an alien's 1988 removal order was impermissibly retroactive where the alien applied for discretionary relief, *i.e.*, adjustment of status, prior to IIRIRA's enactment. The court, consistent with Landgraf, first determined IIRIRA's reinstatement provision contains no clear indication of Congress's intent regarding the provision's retroactive effect. Id. at 804. Moving to the second Landgraf inquiry, the court determined that where application of IIRIRA § 241(a)(5) would affect substantive relief previously available to the alien, retroactive application is impermissible. The court explained:

---

[4] Compare Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 862 (8th Cir. 2002). In Alvarez-Portillo, the Eighth Circuit held retroactive application of § 241(a)(5) was unlawful where an alien illegally reentered the United States and married a United States citizen prior to IIRIRA's effective date. Unlike Petitioner in this case, Alvarez-Portillo did not apply for adjustment of status until 2001, well after IIRIRA's effective date. Subsequently, in Gonzalez v. Chertoff, 454 F.3d 813, 818 (8th Cir. 2006), the Eighth Circuit recognized that "[t]o the extent" Alvarez-Portillo is inconsistent with Fernandez-Vargas, it is overruled.

9

Mr. Faiz-Mohammad both reentered the United States and applied for adjustment of status prior to IIRIRA's effective date. At the time that he made his application, Mr. Faiz-Mohammad, therefore, had the right to have his adjustment of status adjudicated, including the waivers of inadmissibility necessary to his application. Although he had no guarantee of a favorable decision, the second step of Landgraf does not address only the "taking away or impairing of vested rights"; it also asks whether retroactive application would "create[] a new obligation, impose[] a new duty, or attach[] a new disability." Landgraf, 511 U.S. at 280. Section [241](a)(5) prevents aliens who previously have been deported from applying for discretionary relief. This change constitutes a "new disability" that did not exist prior to IIRIRA's passage. . . . Consequently, because § [241](a)(5) operates to "impair rights [Mr. Faiz-Mohammad] possessed when he acted," Landgraf, 511 U.S. at 280, namely his ability to apply for discretionary relief, § [241](a)(5) may not be applied retroactively to Mr. Faiz-Mohammad.

395 F.3d at 809-10.

Similarly, the First Circuit in Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003), concluded IIRIRA § 241(a)(5) would have an unfair retroactive effect on an alien who applied for legal permanent residence in March of 1996, over a year prior to IIRIRA's effective date. Notably, on her application for adjustment of status, Arevalo falsely swore she had never been deported from the United States. INS discovered the falsity and in January 2002, denied her application for adjustment of status. Pursuant to § 241(a)(5), INS reinstated Arevalo's previous order of deportation. Id. at 6. The court noted that even though Arevalo's fabrication may "come back to haunt her," "[d]iscarding her application [for legal permanent residence] now would deprive her both of a right that she once had and

10

of the reasonable expectation that she would have the opportunity to convince the Attorney General to grant her relief." Id. at 15.

Finally, in Cisneros v. United States Attorney General, 381 F.3d 1277, 1284 (11th Cir. 2004), under circumstances most similar to our case, the court held the retroactive application of § 241(a)(5) would attach a new disability to a completed transaction. In that case, Cisnernos reentered the United States illegally, married an American citizen, and applied for an adjustment of status before IIRIRA's effective date. INS adjusted Cisneros's status to lawful permanent resident on a conditional basis, but later reversed course. INS subsequently notified Cisneros he was ineligible for permanent resident status and eventually reinstated Cisneros's previous deportation order in accordance with § 241(a)(5). Id. at 1278. Relying on the Supreme Court's reasoning in INS v. St. Cyr, 533 U.S. 289 (2001),[5] the court held retroactive application of § 241(a)(5) to Cisneros would attach a new disability, *i.e.*, the elimination of the possibility of

---

[5] St. Cyr involved the retroactive application of IIRIRA § 304(b), the portion of the statute withdrawing the possibility of discretionary relief for any individual previously "convicted of any aggravated felony." See 8 U.S.C. § 1229b. The Supreme Court held the elimination of discretionary relief by IIRIRA had an impermissible retroactive effect on St. Cyr and other defendants who had entered plea agreements before the amendment of that section by IIRIRA. The Supreme Court reasoned "IIRIRA's elimination of any possibility of [discretionary] relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." St Cyr, 533 U.S. at 321 (citation and internal quotation marks omitted).

11

discretionary relief, to a completed transaction, *i.e.*, Cisneros's application for discretionary relief. Id. at 1284.

C.

We need not engage in a lengthy analysis to resolve this case. Suffice it to say, we agree with our sister circuits that when application of IIRIRA § 241(a)(5) disturbs an alien's substantive rights or expectations, such as the substantive relief available to the Petitioner in this case, DHS may not apply it retroactively. Like the aliens in the cases from the First, Seventh, and Eleventh Circuits, Petitioner applied for discretionary relief in the form of an adjustment of status prior to IIRIRA's enactment, relief that was available to him at the time. Section 241(a)(5) eliminates the possibility of such relief and thus, retroactive application of § 241(a)(5) attached a new disability. See id. at 1283. The new disability attached to a completed transaction because Petitioner had applied for relief prior to IIRIRA's enactment. When such a retroactive effect exists, Landgraf requires us to apply our traditional presumption against retroactive application of the statute. 511 U.S. at 280. Accordingly, we find DHS's application of § 241(a)(5) to reinstate Petitioner's 1993 removal order constitutes an impermissible retroactive application of the statute.

Because application of § 241(a)(5) revoked Petitioner's eligibility to seek relief after he had sought such relief and subjected him to automatic reinstatement of his order of removal, we **GRANT** the petition for review, **VACATE** the order

of removal, and **REMAND** for proceedings consistent with this opinion.[6]

---

[6] We note Petitioner asks us to order him readmitted to the United States with the status of lawful permanent resident.  Despite Petitioner's request, we grant him no further relief.  Consequently, we deny American Immigration Law Foundation's Motion for Leave to File Supplemental Post-Argument Brief as Amicus Curiae in Support of Petitioner.