# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1283

_____

| | | |
|---|---|---|
| Jose Favio Molina Jerez, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of the |
| | * | Department of Homeland Security. |
| Eric H. Holder, Jr., Attorney General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 18, 2009
Filed: August 25, 2010

_____

Before RILEY, Chief Judge,[1] WOLLMAN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Jose Favio Molina Jerez (Molina) petitions for review of a final order of reinstatement of removal entered by the Department of Homeland Security,

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

Immigration and Customs Enforcement (DHS).[2] We dismiss in part and deny in part Molina's petition.

## I. BACKGROUND

### A. Three Illegal Entries

Molina is a Guatemalan national. In March 1985, Molina entered the United States illegally at Nogales, Arizona. DHS's records state Molina "tried to apply for amnesty in [Los Angeles, California], but was informed of his ineligibility due to time and dates of entry to [the United States]." In August 1987, Molina left the United States "to visit his parents and common-law Guatemalan wife and three children."

In October 1987, Molina entered the United States illegally for a second time. DHS apprehended Molina near Nogales, "enroute to his former residence and legal wife in Los Angeles." DHS placed Molina in deportation proceedings.[3] In an order to show cause, DHS alleged Molina entered the United States without inspection, in violation of 8 U.S.C. § 1251(a)(2) (1988).

In May 1989, an immigration judge found Molina deportable as alleged, but granted Molina the privilege to depart the United States voluntarily on or before

---

[2]For the sake of simplicity, we refer to "DHS" throughout our opinion, often anachronistically, thereby ignoring the reorganization and renaming of the relevant agencies after Molina first entered the United States illegally. See Betz v. Chertoff, 578 F.3d 929, 932 (8th Cir. 2009) (sketching the creation of DHS and the merger of the Immigration and Naturalization Service and the Bureau of Customs Enforcement), cert. denied, 130 S. Ct. 1911 (2010). We deny the request of Eric H. Holder, Jr., Attorney General of the United States, to substitute Janet Napolitano, Secretary of DHS, as the nominal respondent to Molina's petition. See 8 U.S.C. § 1252(b)(3)(A) ("The respondent is the Attorney General.").

[3]"What was formerly known as 'deportation' is now called 'removal.'" Fernandez-Vargas v. Gonzales, 548 U.S. 30, 33 n.1 (2006). We use the terms interchangeably. See Lopez v. Heinauer, 332 F.3d 507, 510 n.3 (8th Cir. 2003).

September 2, 1989. See id. § 1254(e). In the event Molina failed to depart in a timely manner, the immigration judge alternatively ordered Molina's deportation to Guatemala. Molina abused his privilege of voluntary departure and remained in the United States for more than one year after he was ordered to depart voluntarily. The immigration judge's alternate deportation order, therefore, became a final order of deportation.

In December 1990, Molina left the United States on his own accord, but subject to the immigration judge's deportation order. Molina did not apprise DHS he left the United States.

In March 1991, Molina entered the United States illegally for a third time. Molina crossed the Mexican border near San Ysidro, California, and settled in Los Angeles.

B.    **Applications for Asylum and Work Authorization**

In January 1992, Molina filed two applications with DHS: (1) an application for asylum, and (2) an application for permission to work in the United States.[4] In each application, Molina falsely stated under oath that he had last entered the United States on March 15, 1985.

In his asylum application, Molina testified he was "unwilling to return to Guatemala for the well founded fear of persecution by the leftist guerrillas"; he "would be discriminated [against], persecuted and humiliated" if he returned; and his "life [was] in danger due to[]the constant violence in Guatemala that everyday is getting worse." In exchange for "protection while [his] application . . . [was]

---

[4]DHS records reflect Molina's applications were filed on January 2, 1992. Molina claims he submitted his asylum application in late 1991.

-3-

pending," Molina "promise[d] to respect all the laws . . . of the [United States]."[5] Molina expressed his "wish to return to Guatemala once the situation of [instability] gets better."

For most of the next two decades, DHS failed to issue a final decision on Molina's asylum application. No later than 1995, DHS granted Molina's application to work in the United States. Molina gained lawful employment as a laborer in Lexington, Nebraska.

## C.    Intervening Changes in the Law

The significant delay in processing Molina's asylum application was not unusual. In 1985, "thousands of Salvadorian and Guatemalan asylum seekers . . . filed a lawsuit against [DHS] claiming their asylum applications had not been fairly adjudicated." Cuadra v. Gonzales, 417 F.3d 947, 948 (8th Cir. 2005). In 1991, a district court approved a class-action settlement agreement, American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) (ABC), in which DHS "agreed not to deport class members (commonly referred to as the ABC class), to give each class member a proper *de novo* asylum interview, and to give class members work authorization while they awaited these interviews." Cuadra, 417 F.3d at 948. DHS "delayed implementation of the settlement for years." Id.

### 1.    IIRIRA

While Molina's asylum application was pending, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No.

---

[5]In 2005, while his asylum application was pending, Molina was accused of beating his four-year old grandson with a leather belt. The boy allegedly suffered a ten-inch-long and one-inch-wide welt across his upper torso. Molina pled "no contest" in the District Court of Dawson County, Nebraska, to Negligent Child Abuse, a misdemeanor violation of Neb. Rev. Stat. § 28-707. Molina was sentenced to three days in jail and fourteen months of probation.

104-208, 110 Stat. 3009-546.  In relevant part, IIRIRA: (1) replaced suspension of deportation with cancellation of removal, and (2) strengthened an extant reinstatement-of-removal provision.

### a.    Cancellation of Removal

Before IIRIRA, aliens with pending asylum claims were able to apply for suspension of deportation, which "gave the Attorney General discretion to grant permanent resident status to an alien who had been in the United States for seven years, was of good moral character, and whose deportation would cause extreme hardship for the alien or certain lawfully present relatives."  Cuadra, 417 F.3d at 948-49 (discussing 8 U.S.C. § 1254 (1994)).  Time spent in deportation proceedings before applying for suspension of deportation counted toward the seven-year physical presence requirement.  Tang v. INS, 223 F.3d 713, 715 (8th Cir. 2000).

IIRIRA replaced suspension of deportation with cancellation of removal.  See 8 U.S.C. § 1229b (2006); Chanmouny v. Ashcroft, 376 F.3d 810, 811 n.1 (8th Cir. 2004) (citing IIRIRA §§ 304, 308(b)(7)).  Cancellation of removal is "a much more restrictive form of immigration relief."  Cuadra, 417 F.3d at 949.  "Among other things, the IIRIRA contains a stop-time rule, terminating the accrual of continuous physical presence at the time when an alien is served with a notice to appear before [DHS] on deportation charges."  Escudero-Corona v. INS, 244 F.3d 608, 613 (8th Cir. 2001) (citing 8 U.S.C. § 1229b(d)(1) (Supp. III 1997).  This "stop-time rule" is retroactive and "applies to show cause orders issued before . . . IIRIRA's enactment date."  Id. (citing 8 U.S.C. § 1101 note).

### b.    Reinstatement of Removal

Before IIRIRA, reinstatement of removal was a "little-used" provision, which "did not apply to aliens . . . who were deported for entering the country without inspection."  Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 862 (8th Cir. 2002) (citing 8 U.S.C. § 1252(f) (1994)), overruled on other grounds by Fernandez-Vargas v.

Gonzales, 548 U.S. 30 (2006). IIRIRA ushered in "a broader and far less forgiving reinstatement-of-removal provision." Id. (discussing IIRIRA § 241(a)(5)). The strengthened version provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (2006).

IIRIRA's strengthened reinstatement-of-removal provision reflects a Congressional determination that "[a]liens who violate U.S. immigration law should be removed . . . as soon as possible" with "[e]xceptions . . . provided only in extraordinary cases specified in the statute and approved by the Attorney General." Alvarez-Portillo, 280 F.3d at 863 (quoting S. Rep. No. 104-249, 7 (1996)). It "applies to all previously deported aliens . . . whose prior deportation was for entry without inspection." Id. In the mine-run case, "the only issues to be determined are those establishing the agency's right to proceed under [8 U.S.C. § 1231(a)(5)]—the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." Id. at 867.

For its part, DHS "adopted a summary administrative reinstatement-of-removal procedure in which '[t]he alien has no right to a hearing before an immigration judge,' an immigration officer determines whether the alien is subject to reinstatement of a prior deportation order, and the alien is entitled only to written notice and an opportunity to 'make a written or oral statement contesting the determination.'" Id. at 863 (quoting 8 C.F.R. § 241.8(a), (b)). "[T]he alien may neither attack the validity

of the prior deportation order nor avoid removal by obtaining discretionary relief such as an adjustment of status to lawful permanent resident." Id.

### c. IIRIRA as Applied to Molina

IIRIRA reduced Molina's chances to stay in the United States if his asylum claim were denied. If, as represented to DHS, Molina never left the United States under the immigration judge's 1989 deportation order, Molina would be subject to cancellation of removal instead of suspension of deportation. If DHS learned Molina left in 1990 and reentered in 1991, Molina would be subject to IIRIRA's strengthened reinstatement-of-removal provision.

### 2. ABC Class Member Benefits

While Molina's asylum application was pending, Congress enacted legislation to ameliorate some of IIRIRA's adverse effects upon ABC class members. Molina attempts to avail himself of such legislation in his petition for review.

### a. NACARA and Cancellation of Removal

In 1997, Congress passed the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA), Pub. L. No. 105-100, 111 Stat. 2160. NACARA § 203 "allows ABC class members to seek relief under conditions approximating pre-IIRIRA suspension of deportation." Cuadra, 417 F.3d at 949. Such relief is called "special rule cancellation of removal." Id.

### b. LIFE Act Amendments and Reinstatement of Removal

In 2000, Congress passed the LIFE Act Amendments of 2000 (LIFE Act Amendments), Pub. L. No. 106-554, 114 Stat. 2763A-324 through 2763A-327. "Section 1505 of the LIFE Act Amendments" exempts ABC class members from IIRIRA's strengthened reinstatement-of-removal provision and thereby "extend[s] NACARA's benefits to a category of aliens previously ineligible for NACARA

relief." Aguilar de Polanco v. U.S. D.O.J., 398 F.3d 199, 202 (2d Cir. 2005). More specifically,

> Prior to the passage of § 1505, [ABC class members] who had departed and reentered the country while under a final order of deportation . . . were rendered ineligible for [NACARA] § 203 relief by the operation of [8 U.S.C. § 1231(a)(5)]. Congress, in enacting the LIFE Act Amendments, made a policy determination that, despite the bar to relief set forth in [8 U.S.C. § 1231(a)(5)], such [ABC class members] should be allowed to seek § 203 relief. With this in mind, the LIFE Act Amendments provided that [NACARA] § 203 determinations could be made without regard to [8 U.S.C. § 1231(a)(5)].

Id. (citation omitted).

### c.     Molina Inquires About ABC Status

Thus, regardless of whether Molina left the United States in 1990, it redounded to Molina's benefit to be an ABC class member. If Molina had not left the United States, he might seek special rule cancellation of removal under NACARA § 203. If Molina had left, he could seek relief from IIRIRA's strengthened reinstatement-of-removal provision under NACARA through § 1505 of the LIFE Act Amendments.

In 2000, Molina repeatedly asked DHS whether he had registered as a member of the ABC class before the deadline for doing so—December 31, 1991. See ABC, 760 F. Supp. at 799-800. DHS informed Molina its records did not show he had registered for ABC benefits.

### D.     DHS Processes Molina's Asylum and NACARA Claims

In December 2005, Molina failed to appear for a scheduled asylum interview. DHS denied Molina's asylum application as abandoned. Molina filed an application for "suspension of deportation or special rule cancellation of removal" under

NACARA § 203, but DHS refused the application in part because Molina failed to attach required photographs.

On April 11, 2007, DHS interviewed Molina under oath about his eligibility for ABC benefits. Molina testified he never filed for ABC benefits. At the conclusion of the interview, DHS issued Molina a "Notice of Ineligibility for ABC Benefits." DHS found there was "no credible evidence" Molina registered for ABC benefits. DHS informed Molina his prior order of deportation "may be enforced against [him] and [he] may be removed from the United States."

Molina then signed a waiver of his right to reconsideration. Molina acknowledged:

> I understand that [DHS] has determined that I am ineligible for the benefits of the ABC settlement agreement . . . . I . . . understand that I have 30 days in which to challenge this determination in federal court. I wish to waive this 30-day period in order to complete my removal.

Shortly thereafter, however, Molina filed a motion to reconsider and to reopen. Molina confirmed "during his interview [he] could not recall registering for ABC," opined he "did not understand [ABC's] importance" and "misspoke regarding his registration." Molina presented DHS with a copy of an ABC registration form dated December 30, 1991 (one day before the deadline). The copy does not contain DHS's date stamp or bear any other indicia of filing. Molina asserted that, because he timely registered for ABC benefits, he was eligible for relief from cancellation of removal. Molina also added that he "neglected to mention that he did leave the country and executed" his prior deportation order, although Molina did not mention a specific date of departure. As proof, Molina submitted a copy of a "Cédula de Vecindad" (cédula) "indicating his presence [in Guatemala] on February 28, 1991."

-9-

In April 2008, DHS conducted an "[i]nterview on eligibility for asylum and withholding of removal." Molina did not inform DHS he had left the United States in December 1990, but instead contemporaneously re-signed his original asylum form, which stated he last arrived in the United States on March 15, 1985. Molina testified that, while a member of the Guatemalan military police in the 1970s, he arrested and interrogated "suspected guerrillas." He "referred" some of the guerrillas "to S-2 and G-2" and heard the guerrillas "were disappeared or tortured or thrown into the sea." In his sworn statement, Molina acknowledged "referr[ing] . . . five [guerrillas] knowing they could be tortured or disappeared." Molina admitted watching a guerrilla "tied on his arms and legs to 4 jeeps and dismembered."

In August 2008, DHS took Molina into custody. In September 2008, DHS notified Molina it intended to deny his asylum claim. DHS found Molina to be generally credible in his testimony at his asylum interview, but DHS held Molina failed to establish past persecution in Guatemala, a well-founded fear of future persecution in Guatemala, or it was more likely than not Molina's life or freedom would be threatened if he returned to Guatemala. DHS afforded Molina thirty days to seek reconsideration and present rebuttal evidence.

In his response, Molina reasserted he had registered for <u>ABC</u> benefits and was entitled to NACARA relief.[6] Molina resubmitted his unstamped <u>ABC</u> registration form to DHS and another application for "suspension of deportation or special rule cancellation of removal" under NACARA § 203. Molina failed, however, to either sign the application or include the required photographs. In such application, Molina denied ever having "been ordered deported or removed"; "depart[ing] the United States under an order of deportation or removal"; or "overstay[ing] a grant of

---

[6]Despite his conviction for child abuse, Molina falsely stated he had "**no criminal conviction for[ ]any offense. The only blemish [Molina] has in the United [S]tates is his 'ILLEGAL ENTRY.'**" (emphasis in original).

voluntary departure." Molina stated he left the United States in "12/1990" and reentered in "3/1991."

In November 2008, DHS denied Molina's asylum claim. DHS found Molina's "rebuttal failed to overcome the basis of the decision of [DHS] to deny [his] request for asylum." DHS informed Molina of its intent to execute the immigration judge's 1989 deportation order.

### E.    Removal

On December 3, 2008, Molina applied for a stay of deportation. Molina argued there was no legal basis for deportation because "he did leave the United States in 1990 thereby executing the judge's order." Molina again alleged he was a member of the ABC class and entitled to special rule cancellation of removal. DHS denied Molina's motion, finding "there is no credible evidence that he registered for ABC benefits"; "there is no proof" Molina departed the United States in 1990; and the immigration judge's departure order is "still in effect."

At 9:37 a.m. on December 4, 2008, a DHS-operated airplane carrying Molina departed Louisiana for Guatemala.

## F. Emergency Order[7]

At 9:38 a.m., Molina filed a petition for a writ of habeas corpus in the United States District Court for the District of Nebraska against various government officials. Molina asserted jurisdiction under 28 U.S.C. §§ 2241, 1331 and 1361. Among other things, Molina argued DHS's final order of removal was unlawful because (1) Molina left the United States in 1990, "thereby executing the Immigration Judge's order of removal," which was "no longer valid for purposes of removal"; (2) application of IIRIRA's strengthened reinstatement-of-removal provision was impermissibly retroactive as applied to Molina; and (3) Molina was entitled to special rule cancellation of removal. Molina asked the district court to stay his removal and release him from custody.

At 12:06 p.m., the district court "provisionally granted" Molina an emergency stay "pending a hearing on the matter." The district court ordered: "Any proceeding or action to remove [Molina] from the United States of America to Guatemala is hereby stayed until further order of the court." (Emergency Order). At the time the district court issued its Emergency Order, Molina was already outside of the United States and within thirty minutes of landing in Guatemala. DHS returned Molina to the United States and took him into custody. The district court cancelled the hearing, observed Molina "could be entitled to relief," and ordered DHS to respond to Molina's petition. See 28 U.S.C. § 2243. In its response, DHS argued the district

---

[7]Ordinarily our scope of review is limited to "the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Molina moved to supplement the administrative record to include certain documents, which are part of Molina's administrative file with DHS. DHS initially resisted the motion, and we reserved ruling. DHS later withdrew its objection and moved to supplement the record to include "the complete certified administrative record" filed in the district court case. We granted DHS's motion, and now we grant Molina's motion. In their briefs, the parties freely refer to the district court proceedings, of which we may take judicial notice for the sake of completeness. Cf. Stutzka v. McCarville, 420 F.3d 757, 760-61 n.2 (8th Cir. 2005); Gustafson v. Cornelius Co., 724 F.2d 75, 79 (8th Cir. 1983).

court lacked subject matter jurisdiction and urged the district court to dismiss the petition under Fed. R. Civ. P. 12.

## G.    Reinstatement Order

On December 18, 2008, Molina asked DHS to release him upon a bond.  DHS apparently was asserting alternate grounds for Molina's removal: (1) if Molina did not depart the United States in 1990, he was subject to deportation under the immigration judge's 1989 order, or (2) if Molina left the United States in 1990, Molina was subject to IIRIRA's strengthened reinstatement-of-removal provision.  Molina insisted (1) the cédula proved he left the United States in 1990, so he was no longer subject to deportation under the immigration judge's 1989 order, and (2) IIRIRA's strengthened reinstatement-of-removal provision did not apply, because Molina was an ABC class member and, in any event, such provision would be impermissibly retroactive as applied to Molina.  Molina provided DHS his original cédula, which DHS forwarded to a forensic laboratory for evaluation.

On January 8, 2009, DHS invoked IIRIRA and reinstated the immigration judge's 1989 order of removal.  See 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8.  Unable to prove the cédula was fake or authentic, DHS conceded Molina left the United States in December 1990, but then reentered in March 1991. Although DHS's reinstatement-of-removal order (Reinstatement Order) does not address Molina's request for ABC benefits, Molina contends DHS found he was not eligible for ABC benefits.[8]

On February 6, 2009, Molina filed the instant petition for review of the Reinstatement Order, pursuant to 8 U.S.C. § 1252.

---

[8]On January 20, 2009, Molina signed another application for NACARA relief. There is no evidence in the record Molina filed the application with DHS.

**H.     Order to Show Cause**

Upon learning of the Reinstatement Order, the district court issued an order to show cause to DHS.  The district court stated the Reinstatement Order "may be a proceeding or action to remove [Molina] from the United States in violation of" the Emergency Order.  In response, DHS stressed it did not intentionally violate the Emergency Order, pointing out (1) the Emergency Order lapsed when DHS returned Molina and the district court cancelled the hearing; and (2) DHS was not attempting to execute an outstanding order of deportation, but rather reinstate a prior order of removal.  DHS reiterated the district court lacked jurisdiction over Molina's habeas corpus petition and pointed out Molina filed a petition for review with the court of appeals.

After a hearing, the district court found DHS, albeit acting in good faith, unintentionally violated the Emergency Order, because "the [R]einstatement [O]rder materially alter[ed] [Molina's] position with respect to his habeas petition."  The court then wrote:

> If the reinstatement order stands, then [Molina's] habeas petition should be denied.  However, if it is set aside, then his petition should be granted. . . . There is no doubt [the Eighth Circuit] is the proper forum for review of the validity of the reinstatement order.  See 8 U.S.C. § 1252(b)(2). [Molina concedes] the arguments before this Court would be largely the same as those he would make before the [Eighth Circuit].  It is therefore unnecessary for this Court to decide whether setting aside the reinstatement order as a sanction is "review of [an] order[] of removal" within the meaning of 8 U.S.C. § 1252(b), because the [Eighth Circuit] will likely consider whether the order should be set aside on that basis. The most appropriate course for this Court, therefore, is to stay these proceedings pending the outcome of [Molina's petition for review].

The district court left "the question of detention to [the court of appeals'] sound judgment," but found Molina was non-violent; Molina did not pose a flight risk; and

Molina's "immediate removal from the United States would not be in the public interest." The district court concluded "all prior orders . . . shall remain in effect."

## I.    Emergency Motion

In February 2009, Molina asked our court for an emergency stay of removal (Emergency Motion). See Fed. R. App. P. 27. Molina stated, "[t]he core dispute" between Molina and DHS is whether Molina is entitled to ABC benefits and eligible for special rule cancellation of removal under NACARA. Molina also argued his continued detention was impermissibly indefinite under Zadvydas v. Davis, 533 U.S. 678 (2001). Molina asserted a stay was appropriate because his probability of success on the merits was high, the possibility of irreparable injury or serious legal questions was raised, and the balance of hardships tipped sharply in his favor. DHS resisted Molina's Emergency Motion.

On March 11, 2009, we denied Molina's Emergency Motion. Molina remains in DHS custody in Nebraska pursuant to the district court's stay.[9]

## II.    DISCUSSION

In his petition for review, Molina asks this court to review the Reinstatement Order of January 9, 2009. Molina argues (1) he has demonstrated "prima facie eligibility for relief" under NACARA as an ABC class member and thus the

---

[9]Molina later filed a second petition for a writ of habeas corpus in the district court under 28 U.S.C. § 2241 against various federal officials. Molina argued the officials lacked a legal basis to detain him and, in any event, he was subject to an impermissibly indefinite detention under Zadvydas. The government moved to dismiss the case for lack of jurisdiction and asked the district court to lift its prior stay in light of our denial of the Emergency Motion. The district court denied Molina's petition on its merits, finding Molina's detention was authorized under 8 U.S.C. § 1231, but denied DHS's motion to lift the stay "in a related, yet unconsolidated matter."

Reinstatement Order is contrary to law; and (2) the Reinstatement Order is impermissibly retroactive.

### A.     Jurisdiction

Our jurisdiction to consider Molina's petition is narrow. "Congress's authority to establish judicial review procedures in immigration matters is plenary." Dalombo Fontes v. Gonzales, 483 F.3d 115, 119 (1st Cir. 2007). As previously indicated, IIRIRA's strengthened reinstatement-of-removal provision, 8 U.S.C. § 1231(a)(5), provides that reinstatement-of-removal orders are "not subject to being . . . reviewed." It is undisputed Molina meets all of the criteria for reinstatement of removal in § 1231, insofar as an immigration judge ordered Molina deported in 1989, Molina left the United States in 1990, and Molina reentered without inspection in 1991. As a general matter, therefore, Molina does not have a right to judicial review of the Reinstatement Order.

Section 1252 does, however, restore limited jurisdiction to the circuit courts of appeals for the review of reinstatement-of-removal orders. In relevant part, § 1252(a)(2)(D) provides:

> Nothing . . . in any . . . provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Therefore, we have jurisdiction to review "a constitutional claim or question of law" but not DHS's "factual findings or discretionary judgments." Purwantono v. Gonzales, 498 F.3d 822, 824 (8th Cir. 2007).

In determining the extent to which we have jurisdiction under 8 U.S.C. § 1252, "[w]e look to the nature of the argument advanced in the petition." Id. Mere

recitation of constitutional or legal terms in a petitioner's brief will "not convert [an] attack" on DHS's factual or discretionary findings into colorable constitutional or legal claims over which we have jurisdiction. Manani v. Filip, 552 F.3d 894, 900 n.3 (8th Cir. 2009). "[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." Meraz-Reyes v. Gonzales, 436 F.3d 842, 843 (8th Cir. 2006) (per curiam) (quoting Onyinkwa v. Ashcroft, 376 F.3d 797, 799 n.1 (8th Cir. 2004)).

## B.  ABC Benefits

Applying these standards, we lack subject matter jurisdiction over the bulk of Molina's petition. In his primary argument—all but a little more than five pages of the argument section of his brief—Molina contends he is exempt from IIRIRA's strengthened reinstatement-of-removal provision because he has demonstrated "prima facie eligibility for relief under NACARA" through the LIFE Act Amendments. Molina insists he presented DHS with "prima facie evidence of ABC registration" and, therefore, DHS improperly rejected his NACARA application. Molina requests special cancellation of removal and a concomitant right to contest his removal in immigration court.

Although Molina couches his argument in legal concepts, Molina's argument rises or falls upon a single critical factual determination: whether Molina registered for ABC benefits on or before December 31, 1991. Molina admits as much in his brief, when he writes, "A major *factual dispute* in this case is whether [Molina] registered for ABC class benefits." (emphasis added.) Molina points out that, in addition to his proffered ABC registration form dated December 30, 1991, there are repeated references to "ABC" in DHS's computer records. He also notes DHS once stated "you may or may not be eligible for ABC benefits."

The problem for Molina is—DHS found, as a matter of fact, that Molina failed to register for ABC benefits. DHS found Molina's proffered evidence not credible.

-17-

Molina's ABC registration form, while dated December 30, 1991, is not file-stamped. Because DHS has no internal record indicating Molina registered for ABC benefits and Molina denied registering for ABC benefits under oath, Molina's production of an ABC registration form at the eleventh hour is suspicious. The significance of the references to "ABC" in Molina's DHS file is unknown, and Molina's attempt to construe such references as concessions or admissions by DHS is speculative, at best. Any such speculation is at odds with DHS's consistent—and final—position that Molina is not eligible for ABC benefits, and DHS's ultimate decision to reinstate Molina's prior removal proceedings.

Whether Molina registered for ABC benefits in a timely manner is a purely factual issue over which this court lacks jurisdiction. See, e.g., Flores v. Gonzales, 205 F. App'x 573, 574 (9th Cir. 2006) (unpub. mem.) ("We lack jurisdiction, under statute, to review the IJ's determination that Barrios Flores was not eligible for NACARA relief because she failed to establish that she timely registered for [ABC] benefits."); see also Viracacha v. Mukasey, 518 F.3d 511, 514-16 (7th Cir.), cert. denied, 129 S. Ct. 451 (2008). Because we lack jurisdiction to review this factual issue, we may not afford Molina the relief he requests, special cancellation of removal under NACARA. In this large part, Molina's petition must be dismissed.[10]

### C. Retroactivity

Molina also argues DHS's reinstatement order "would have an impermissible retroactive effect," because he entered the United States illegally before IIRIRA. DHS denies there is a retroactivity problem, but concedes this is a legal issue over which we retain jurisdiction.

_____

[10]We need not rule on DHS's alternative arguments, such as whether an application for NACARA relief is properly before us or whether Molina waived his right to NACARA relief.

### 1. Jurisdiction

We agree with the parties that we have jurisdiction to consider Molina's retroactivity argument. See 8 U.S.C. § 1252(a)(2)(D); see, e.g., Fernandez-Vargas, 548 U.S. at 37-47 (exercising jurisdiction over a question of retroactivity).

### 2. Law of Retroactivity

A two-step test determines whether a statute may be applied retroactively. At the first step, we discern whether Congress has expressly prescribed the statute's intended reach. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). If so, our inquiry ends. Id. At the second step, we

> examine whether the statute would have a retroactive effect; that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." If the statute would do any of these things, the presumption is that the statute does not govern, absent clear congressional intent otherwise.

Kinerman v. Cadogan (In re ADC Telecomms., Inc. Secs. Litig.), 409 F.3d 974, 976 (8th Cir. 2005) (ADC) (quoting Landgraf, 511 U.S. at 280).

### 3. Analysis

In Fernandez-Vargas, 548 U.S. at 38-42, the Supreme Court found Congress did not expressly prescribe whether IIRIRA's strengthened reinstatement-of-removal provision should apply retroactively to aliens such as Molina, who illegally reentered the United States before IIRIRA went into effect. We must determine, then, whether IIRIRA's strengthened reinstatement-of-removal provision "would impair rights [Molina] possessed when he acted, increase [Molina's] liability for past conduct, or impose new duties with respect to transactions already completed." ADC, 409 F.3d at 976. In making such determination, we are "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations," and we

exercise "commonsense, functional judgment about whether [IIRIRA] attaches new legal consequences to events completed before its enactment." INS v. St. Cyr, 533 U.S. 289, 321 (2001) (quoting Martin v. Hadix, 527 U.S. 343, 357-58 (1999)) (internal marks omitted).

Although the parties do not cite cases precisely on point, we do not believe IIRIRA's strengthened reinstatement-of-removal provision is impermissibly retroactive as applied to Molina. Again, Fernandez-Vargas is instructive.

In Fernandez-Vargas, as here, DHS sought to reinstate a pre-IIRIRA deportation order even though the illegal alien had reentered the United States without inspection prior to IIRIRA's enactment. The alien argued imposition of IIRIRA's strengthened reinstatement-of-removal provision was impermissibly retroactive, but the Supreme Court disagreed. See Fernandez-Vargas, 548 U.S. at 37-47. The Court reasoned, "While the law looks back to a past act in its application to 'an alien [who] has reentered . . . illegally,' . . . . it is the conduct of remaining in the country after entry that is the predicate action." Id. at 44 (quoting 8 U.S.C. § 1231(b)(5)). Therefore, "It is . . . the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment [DHS] finds him out." Id. The Supreme Court concluded:

> What [the alien] complains of is the application of new law to continuously illegal action within his control both before and after the new law took effect. He claims a right to continue illegal conduct indefinitely under the terms on which it began, an entitlement of legal stasis for those whose lawbreaking is continuous. But "if every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever."

Id. at 46 (quoting L. Fuller, The Morality of Law 60 (1964)) (internal marks omitted).

-20-

Molina attempts to distinguish Fernandez-Vargas on the ground he had a pending application for asylum when IIRIRA was enacted. The problem for Molina, however, is IIRIRA did not affect the substance of his asylum application. A statute only has impermissible "retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." Gonzalez v. Chertoff, 454 F.3d 813, 816 (8th Cir. 2006) (quoting St. Cyr, 533 U.S. at 321). The relevant legal standards governing Molina's asylum application remained constant over time, and applying such constant legal standards, DHS found Molina was not entitled to asylum. Molina received exactly what he expected when he filed his asylum application—evaluation of his asylum claim and permission to work in the United States pending its final resolution.

We recognize in Fernandez-Vargas the Supreme Court left open the question of whether IIRIRA's strengthened reinstatement-of-removal provision would be impermissibly retroactive as applied to an alien with a pending application for adjustment of status. See Fernandez-Vargas, 541 U.S. at 36 n.5 (pointing out "[t]he Courts of Appeals . . . are . . . divided on the question whether an alien's marriage or application for adjustment of status before the [reinstatement] statute's effective date (facts not in play here) renders the statute impermissibly retroactive when it is applied to the alien"); see also Valdez-Sanchez v. Gonzales, 485 F.3d 1084, 1089 (10th Cir. 2007). But an application for asylum is not an application for adjustment of legal status, and in all other relevant respects Molina is similarly situated to the alien in Fernandez-Vargas. To the extent Molina complains IIRIRA deprived him of the right to a hearing before an immigration judge, it is settled "[n]o one has a vested right in any given mode of procedure." Crane v. Hahlo, 258 U.S. 142, 147 (1922). "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." Landgraf, 511 U.S. at 275.

Two cases from the Ninth Circuit Court of Appeals, Vasquez-Zavala v. Ashcroft, 324 F.3d 1105 (9th Cir. 2003) and Lopez-Urenda v. Ashcroft, 345 F.3d 788 (9th Cir. 2003), are instructive. In Vasquez-Zavala, the Ninth Circuit held an illegal alien had no settled expectation DHS would initiate pre-IIRIRA deportation proceedings—as opposed to post-IIRIRA removal proceedings—after denial of his asylum application simply because he submitted such application before IIRIRA's effective date. Vasquez-Zavala, 324 F.3d at 1108. In Lopez-Urenda, a similar case, the Ninth Circuit observed:

> Proceedings could have begun several months after [the alien] filed his [asylum] application, in which case suspension of deportation would have remained a viable option; or they could have begun years later, as they did, at a time when the law had undergone significant change. That [the alien] did not know of the specific change—the enactment of IIRIRA and its permanent rules abolishing suspension of deportation—does not mean that he had a settled expectation that proceedings would commence before any such change took place.

Lopez-Urenda, 345 F.3d at 794. Just like the aliens in Vasquez-Zavala and Lopez-Urenda, Molina did not have a settled expectation when he filed his asylum application that suspension of deportation would be available to him if such asylum application were denied. See also Uspango v. Ashcroft, 289 F.3d 226, 230 (3d Cir. 2002) (reaching a similar conclusion and saying, "filing an asylum petition did not implicate any quid pro quo arrangement with the government").

We hold 8 U.S.C. § 1231(a)(5) does not have an impermissible retroactive effect as applied to Molina and deny the remainder of his petition for review.[11]

---

[11]The dissent argues our holding that § 1231(a)(5) does not have an impermissible retroactive effect as applied to Molina is inconsistent with circuit precedent. The two circuit precedents the dissent mentions are Lovan v. Holder, 574 F.3d 990 (8th Cir. 2009) and Alvarez-Portillo v. Ashcroft, 280 F.3d 858 (8th Cir. 2002). Citing Lovan, 574 F.3d at 994, the dissent concludes that, "[p]ost-Fernandez-

Vargas, we have continued to rely upon our retroactivity analysis in Alvarez-Portillo" and "IIRIRA's deprivation of Molina's ability to argue for relief from removal has a substantive effect and is impermissibly retroactive under our case law." Infra at 30-31.

Lovan is inapposite. In Lovan, we held the repeal of 8 U.S.C. § 1182(c) (1994), see IIRIRA § 304(b), would be impermissibly retroactive as to a lawful permanent resident who, before IIRIRA, was convicted by a jury of what is now an "aggravated felony." See Lovan, 574 F.3d at 993-94. Following the Third Circuit's decision in Atkinson v. Attorney General, 479 F.3d 222, 230-31 (3d Cir. 2007), we extended INS v. St. Cyr, 533 U.S. 289, 314-26 (2001), in which the Supreme Court held § 304(b) "would have an impermissible retroactive effect if applied to aliens who became eligible for [§ 1182(c)] relief by pleading guilty to aggravated felonies prior to the statute's repeal." Lovan does not cite Fernandez-Vargas, does cite Alvarez-Portillo, and does not address the retroactivity issue Molina presents in his petition for review.

With respect to the retroactivity issue presented in Molina's petition for review, we recognized in Gonzalez v. Chertoff, 454 F.3d 813 (8th Cir. 2006), that the reasoning of Alvarez-Portillo is overruled. In Gonzalez, we held an alien who failed to apply for adjustment of status before IIRIRA's enactment, based on a pre-IIRIRA marriage, was subject to the new expedited removal proceedings under IIRIRA. See Gonzalez, 454 F.3d at 814-15, 816-18 & n.4. After discussing Fernandez-Vargas at length, we determined "the Supreme Court in Fernandez-Vargas found that the elimination of the opportunity to apply for adjustment of status under [IIRIRA] imposed no new burden on a completed act." Id. at 818. We stated "[w]e find that decision determinative on the issue of retroactivity in the instant case." Id. We then noted, "To the extent our decision in Alvarez-Portillo, 280 F.3d at 861 (holding that 'the substantive defenses to removal eliminated by [8 U.S.C. § 1231(a)(5)] may not be retroactively denied to aliens who illegally reentered prior to enactment'), suggests a different result, it is overruled by Fernandez-Vargas. See Fernandez-Vargas, 126 S. Ct. at 2427 & n.5." Id. at 818 n.4. See also Herrera-Molina v. Holder, 597 F.3d 128, 135-36 (2d Cir. 2010) (surveying our precedents and concluding "the reasoning of Alvarez-Portillo conflicts with [the reasoning of Fernandez-Vargas], and therefore, as the Eighth Circuit itself has recognized, Alvarez-Portillo was overruled").

## D.    District Court Proceedings

We are left with the stayed district court proceedings, to which the parties have brought our attention and upon which the district court has invited us to rule.  We agree with the district court's statement that jurisdiction to review the propriety of the Reinstatement Order rests with the court of appeals.  See 8 U.S.C. § 1252; see, e.g., Ochoa-Carrillo v. Gonzales, 446 F.3d 781, 782 (8th Cir. 2006) (holding the district court lacked jurisdiction to consider a habeas petition challenging a § 1231(a)(5) reinstatement proceeding, explaining "the appropriate court of appeals is the 'sole and exclusive' means to review a § 1231(a)(5) order reinstating a prior removal order"); Lopez v. Heinauer, 332 F.3d 507, 510 (8th Cir. 2003) (same).  Once the district court determined it lacked jurisdiction over Molina's habeas corpus petition, however, the district court was required to transfer the case to us pursuant to 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . , and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

Although § 1631 does not directly empower a circuit court of appeals to transfer a district court case, we may "deem [a] case properly transferred to [this court]." Lopez, 332 F.3d at 511.  Transfer is "mandatory," and we need not engage in the empty formalism of  "remand[ing] to the district court and direct[ing] that court to transfer the case back to us so that we can consider what is already before us" in a petition for review of a reinstatement order.  Id.; see also Paul v. INS, 348 F.3d 43, 46-48 (2d Cir. 2003) (Sotomayor, J.) (sua sponte transferring district court case to court of appeals).  Cf. Rodriguez-Roman v. INS, 98 F.3d 416, 424 (9th Cir. 1996).  In this case, transfer is in the interest of justice, because transfer (1) furthers Congress's intent, plainly expressed in 8 U.S.C. § 1252, to streamline litigation over removal

-24-

orders into the circuit courts of appeals; (2) allows for a prompter disposition; and (3) is consistent with the district court's invitation for us to resolve Molina's entire case. See INS v. Doherty, 502 U.S. 314, 323 (1992) (recognizing "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States").

Upon transfer, we dismiss Molina's petition for a writ of habeas corpus in accordance with our disposition of his petition for review. The district court's Emergency Order is improper and is vacated. See 8 U.S.C. § 1252(e)(1)(A); id. § 1252(b)(3)(B). See also Rife v. Ashcroft, 374 F.3d 606, 615-16 (8th Cir. 2004) (noting "IIRIRA repealed the provision that courts may not review a removal order if the alien has departed the United States" and "abolished the rule that aliens are entitled to automatic stays of removal upon filing petitions for review").

## III.    CONCLUSION

We dismiss in part (jurisdiction is lacking for the court to review Molina's eligibility for NACARA relief as an ABC class member) and deny in part (no impermissible retroactivity exists) Molina's petition for review. Molina's motion to supplement the administrative record is granted. The clerk of court is directed to enter an order transferring *Jose Favio Molina Jerez v. Jeffery Lynch, et al.*, No. 8:08-cv-522 (D. Neb. filed Dec. 4, 2008) to this court, which shall then be consolidated with this case. The district court's order enjoining Molina's removal from the United States is vacated, and Molina's petition for a writ of habeas corpus is dismissed. The mandate shall issue forthwith.

WOLLMAN, Circuit Judge, dissenting.

The majority recognizes the validity of all aspects of Molina's retroactivity claim, save one: whether application of IIRIRA would affect his substantive rights by retroactively eliminating his ability to argue for relief from removal. The majority

-25-

concludes that it would not. Because I believe that such a holding is contrary to Eighth Circuit precedent, I respectfully dissent.

Molina applied for asylum in 1992. DHS did not finally adjudicate his application until 2005. During the thirteen years in which Molina's application was pending, Congress enacted IIRIRA, which expanded the class of aliens subject to expedited removal via reinstatement of a prior removal order. IIRIRA enabled DHS to reinstate the removal order of an alien who had been previously removed and allowed administrative staff to determine when expedited removal applied. Immigration and Nationalization Act § 241(a)(5), 8 U.S.C. § 1231(a)(5). Under the new law, "the alien is not eligible and may not apply for any relief" from removal, meaning, for example, that the alien may not argue for suspension of deportation on the grounds of undue hardship. Id. Molina argues that, in light of his asylum application, DHS's attempt to use expedited removal constitutes an impermissible retroactive application of IIRIRA.

As the majority notes, we have jurisdiction to consider a retroactivity claim in this context, because it presents a pure question of law. Lovan v. Holder, 574 F.3d 990, 994 (8th Cir. 2009). Our consideration of this claim, as the majority states, is guided by Landgraf v. USI Film Prods., 511 U.S. 244 (1994). Because Congress did not explicitly prescribe the temporal reach of IIRIRA, we must determine whether application of IIRIRA to Molina would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280. If a statute merely changes "procedural rules" and does not affect "substantive rights, liabilities, or duties," it will not have an impermissible retroactive effect. Id. at 275, 278.

In Alvarez-Portillo v. Ashcroft, we concluded that IIRIRA had an impermissible retroactive effect on the petitioner because it denied him the ability to argue affirmative defenses to removal. 280 F.3d 858, 867 (8th Cir. 2002), overruled

-26-

on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006). We found that this was a substantive rather than a merely procedural change. Id. We determined "that the elimination of a substantive defense, without more, attaches new legal consequences to events completed prior to enactment that would give rise to liability under the new statute." Id. (internal punctuation omitted). Four other circuits have reached the same conclusion. Valdez-Sanchez v. Gonzalez, 485 F.3d 1084, 1090-91 (10th Cir. 2007) ("[W]hen application of IIRIRA § 241(a)(5) disturbs an alien's substantive rights or expectations, such as the substantive relief available to the Petitioner in this case, DHS may not apply it retroactively."); Faiz-Mohammad v. Ashcroft, 395 F.3d 799, 810 (7th Cir. 2005) (holding IIRIRA's preclusion of application for relief constitutes a new disability and is impermissibly retroactive); Cisneros v. U.S. Att'y Gen., 381 F.3d 1277, 1284 (11th Cir. 2004) (holding IIRIRA's denial of ability to apply for relief "created a new disability" and was impermissibly retroactive); Arevalo v. Ashcroft, 344 F.3d 1, 14 (1st Cir. 2003) ("The availability of relief (or, at least, the opportunity to seek it) is properly classified as a substantive right."). Applying Alvarez-Portillo to Molina's case, I conclude that retroactive deprivation of his ability to argue for relief from removal is impermissible.

The majority makes three arguments in reaching the opposite conclusion: (1) Molina's claim is foreclosed by Fernandez-Vargas, (2) IIRIRA did not affect the substance of Molina's asylum application, and (3) Molina did not have a settled expectation in the ability to argue for relief from removal.

First, Fernandez-Vargas does not foreclose relief for Molina. In Fernandez-Vargas, the petitioner was subject to expedited removal based upon his continued illegal presence in the United States after IIRIRA's enactment. 548 U.S. at 45-47. Fernandez-Vargas failed to take affirmative steps to remedy his illegal presence until 2001, years after the new law took effect. Id. at 35. Accordingly, the illegal act that subjected Fernandez-Vargas to expedited removal was his continued presence in the United States. Unlike Fernandez-Vargas, Molina took affirmative steps to legalize his

presence. Molina applied for asylum well before IIRIRA took effect, and the agency did not consider his application until years after the passage of IIRIRA. Moreover, unlike Fernandez-Vargas, Molina was lawfully present and authorized to work in the United States pending the adjudication of his asylum application. Molina is not similarly situated to Fernandez-Vargas because he is being sanctioned for his re-entry and not for his continuing presence in the country.

The Court limited its holding in Fernandez-Vargas to petitioners who, unlike Molina, failed to take steps to legalize their presence pre-IIRIRA. Id. at 46. The Court expressed no opinion regarding the circumstances we confront here: a retroactivity claim brought by a petitioner who had sought to legalize his presence in the United States prior to the enactment of IIRIRA. Id. Thus, one questions the majority's use of Fernandez-Vargas to satisfy the Landgraf analysis in light of the fact that Fernandez-Vargas did not resolve whether deprivation of the ability to argue for relief from removal affected substantive rights. Fernandez-Vargas, 548 U.S. at 38 n.6, 45-47. Numerous courts have recognized that a narrow avenue of relief remains for petitioners who sought to legalize their presence before IIRIRA took effect. Valdez-Sanchez, 485 F.3d at 1086; Wilson v. Gonzales, 471 F.3d 111, 121-22 (2d Cir. 2006); United States v. Charleswell, 456 F.3d 347, 362 n.19 (3d Cir. 2006). Consequently, Fernandez-Vargas does not preclude the claim that Molina brings here and it does not resolve the Landgraf issue we face.

Second, the majority argues that depriving Molina of the ability to argue defenses to removal is permissible because IIRIRA did not affect the substance of his asylum application. But the impact of IIRIRA on his asylum application is just one aspect of Molina's claim. He also argues that retroactive deprivation of the ability to argue for relief from removal by IIRIRA is impermissible. As we stated in Alvarez-Portillo, each provision of IIRIRA must be considered individually to determine its retroactive effect on each aspect of the petitioner's case. 280 F.3d at 865; see Landgraf, 511 U.S. at 280. At issue in this case is Molina's ability to argue for relief

from removal. Because § 1231(a)(5) eliminates this possibility, our traditional presumption against retroactivity prevents the application of § 1231(a)(5) to him. It is worth repeating that Molina argues that he was improperly deprived of the ability to argue for defenses to removal. On this point, our precedent compels a result contrary to the majority's decision.

Third, the majority cites two Ninth Circuit cases and one Third Circuit case to support its argument that Molina did not have a settled expectation that he could apply for relief from removal pre-IIRIRA. Lopez-Urenda v. Ashcroft, 345 F.3d 788 (9th Cir. 2003); Vasquez-Zavala v. Ashcroft, 324 F.3d 1105 (9th Cir. 2003); Uspango v. Ashcroft, 289 F.3d 226 (3d Cir. 2002). These cases are inapposite because they deal with situations in which petitioners filed last-minute asylum applications in the hope of avoiding the implications of IIRIRA, Lopez-Urenda, 345 F.3d at 790 (application filed three weeks before passage of IIRIRA); Vasquez-Zavala, 324 F.3d at 1106 (application filed three weeks before IIRIRA took effect); Uspango, 289 F.3d at 228 (application filed two months prior to passage of IIRIRA), a point recognized by both the Ninth and Third Circuits in subsequent cases. See Hernandez de Anderson v. Gonzales, 497 F.3d 927, 943 (9th Cir. 2007); Halul v. Ashcroft, 96 Fed. Appx. 827, 830 (3d Cir. 2004) (unpublished). The majority's citation to Lopez-Urenda, Vasquez-Zavala and Uspango is puzzling because the petitioners in these cases received what Molina seeks: adjudication of his case before an immigration judge and the opportunity to argue for defenses to removal. 345 F.3d at 790-91; 324 F.3d at 1106-07; 289 F.3d at 228-29. Moreover, the issue in Lopez-Urenda, Vasquez-Zavala, and Uspango was the standard to be used when adjudicating the claim for relief, not whether the petitioner could bring a claim for relief at all.

Indeed, subsequent cases out of the Ninth and Third circuits support a conclusion contrary to the one that the majority draws. As the Ninth Circuit subsequently held in Hernandez de Anderson, IIRIRA is impermissibly retroactive when applied to a petitioner who applied for naturalization in 1995, more than a year

before IIRIRA took effect, because it "would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." 497 F.3d at 944. As the court explained, "To deny Petitioner the opportunity to apply for suspension of deportation would be inconsistent with the elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Id. And as the Third Circuit has elaborated on these types of claims, a petitioner need not demonstrate reliance on pre-IIRIRA law to prevail on a retroactivity claim; he need only show that the law affected rights he possessed when he acted. Atkinson v. Att'y Gen. of U. S., 479 F.3d 222, 227-28 (3d Cir. 2007) ("The Court has never held that reliance on the prior law is an element required to make the determination that a statute may be applied retroactively."). Thus, these cases appear to support Molina's claim, rather than refute it.

An unexplained premise in the majority's opinion is that Molina's asylum application is meaningfully different from an application for an adjustment of status for the purpose of our retroactivity analysis. Both an application for asylum and an application for adjustment of status involve attempts to legalize one's presence in the United States. The Landgraf analysis does not rise or fall upon the character or the type of relief the petitioner sought. INS v. St. Cyr, 533 U.S. 289, 325 (2001) (stating that it was immaterial to the retroactivity analysis whether the relief sought was discretionary or not). Rather, the question is whether application of the new law had a substantive effect on the petitioner.

As recounted above, we have held that deprivation of the ability to argue defenses to removal affects substantive rights and is not merely a procedural change. Alvarez-Portillo, 280 F.3d at 867. Post- Fernando-Vargas, we have continued to rely upon our retroactivity analysis in Alvarez-Portillo. See Lovan, 574 F.3d at 994. IIRIRA's deprivation of Molina's ability to argue for relief from removal has a substantive effect and is impermissibly retroactive under our case law.

-30-

Congress did not authorize retroactive application of IIRIRA to individuals like Molina and the majority has not provided sufficient justification for allowing DHS to do so. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf, 511 U.S. at 265. "That a statute shall not be given retroactive effect, unless such construction is required by explicit language or by necessary implication, is a rule of general application." United States v. St. Louis, S. F. & T. Ry. Co., 270 U.S. 1, 3 (1926). However problematic Molina's claim for relief may appear to some, our traditional presumption against retroactive application entitles him to have it reviewed on its merits. Accordingly, I would grant the petition for review.

—————————————————